**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CRYSTAL VASCONCELLOS | : | |
| | : | |
| v. | : | |
| | : | C.A. No.: 06-4016 |
| | : | |
| PIER 1 IMPORTS (US) INC., and | : | |
| CINDY BALDWIN, Individually and in her capacity | : | |
| and as an employee and Regional Manager of | : | |
| Pier 1 Imports (US) Inc. | : | |

**PLAINTIFF'S MEMORANUDM IN SUPPORT OF HER MOTION TO EXTEND THE CLOSURE DATE FOR DISCOVERY**

Now comes the Plaintiff in the above-entitled action and moves that this Honorable Court overturn the granting of Defendant's motion to quash the depositions of Karol Pruett and Dawn Testa or in the alternative to extend the closure for discovery to allow Plaintiff to take said depositions. A memorandum in support of said motion is as follows.

1. RECONSIDERATION OF MAGISTRATE ALMOND'S ORDER TO GRANT THE QUASHING OF SUBPOENAS

On or about February 6, 2008, Magistrate Almond granted Defendant's motion to quash the depositions of Karol Pruett and Dawn Testa. This decision was made without waiting for an objection from Plaintiff, though the time within which to reply to Defendant's motion had not passed. In that the objection filed on the same date (and before Plaintiff knew of the Order provided by Magistrate Almond) is very similar to the motion to allow the depositions of Karol Pruett and Dawn Testa, Plaintiff will provide the reasons for allowing said depositions below.

2. EXTENDING THE CLOSURE OF DISCOVERY TO ALLOW DEPOSITIONS

On or about January 31, 2008, Justice Torres denied Plaintiff's motion to extend the discovery date an additional 45 days from February 6, 2008 until March 22, 2008. At that time, Justice Torres stated that the motion would be denied; however, if Plaintiff could provide additional reasons to extend the closure for discovery, Justice Torres would reconsider said motion. The following are additional reasons explaining the reasons to extend discovery for the sole purpose of deposing Karol Pruett and Dawn Testa.

Plaintiff does not deny that this Honorable Court ordered discovery to close on January 15, 2008, nor does it deny that a letter was sent to Plaintiff that discovery would close on February 5, 2008. In fact, the reason for this delay in closing discovery was that Defendant requested that the depositions of Cindy Baldwin and Susan Dubois, originally scheduled for December 14, 2007, be rescheduled for January 4, 2008, which was granted along with the stipulation that discovery close on February 6, 2008 (the number of days from December 14 until January 4). Plaintiff explained that she needed these additional days in case any information was obtained at the depositions that would require additional discovery. In discussions with the attorney for Defendant and at the conference with Justice Torres on January 30, 2008, all parties agreed that discovery was extended until February 6, 2008. If the parties had not agreed at said conference that the discovery closed on February 6, 2008, the deposition would have been scheduled on February 5, 2008. In fact, in Plaintiff's motion to extend discovery (see attached), Plaintiff stated that it was agreed by all parties that discovery would close on February 6, 2008, and this was agreed to by all parties at said conference.

Any delay in taking the depositions of Cindy Baldwin and Susan Dubois was due

to the delay in obtaining discovery from Defendant. Complete response to Plaintiff's discovery was not provided until a motion to compel was filed, and then after an Order was filed. Additional answers to interrogatories, as per said order, were not provided until approximately December 27, 2007. Additional responses to production, as per said order, were being provided up until approximately January 2, 2008. If discovery information was provided earlier by Defendant, Plaintiff would have taken the depositions of Cindy Baldwin and Susan Dubois earlier and Plaintiff would not have had to schedule the depositions of Cindy Baldwin and Susan Dubois so close to the discovery closure date. Further, at the January 4, 2008 depositions, Defendant requested that the deponents read and sign the transcripts.

Late in the day on January 30, 2008, attorney for the Plaintiff received the transcript of the depositions of Cindy Baldwin and Susan Dubois. The transcripts were immediately provided to the Plaintiff, who then read said transcripts and spoke with her attorney as to additional people who needed to be deposed. As soon as this information was relayed, attorney for the Plaintiff noticed the depositions of Karol Pruett and Dawn Testa. This notice was then faxed to Defendant and their subsequent motion to quash was filed. The reasons for the necessity of deposing said people will be discussed below.

<u>Dawn Testa</u>

On January 30, 2008, transcripts from the depositions of Cindy Baldwin and Susan Dubois were received and immediately forwarded to Plaintiff. Upon review of the transcripts, Plaintiff was informed of various people who were pregnant during the same time period.

26

Were there any store managers who were pregnant during

the time period that you worked for Pier One?
A. Yes.
Q. Who was that?
A. Jasmine, store manager in Seekonk.
Q. Okay. Do you remember when she was pregnant?
A. I believe it was two summers ago.
Q. Okay. Do you remember whether it was after or before Crystal was separated?
A. I don't know if it was after or before. I don't. I don't remember that, no.

27

Q. But you believe it was 2005?
A. I do believe so, yes.
Q. Do you know of any other store managers that were pregnant while you were employed at Pier One?
A. Yes.
Q. Who was that?
A. Danielle. She was the store manager in Taunton.
Q. Do you remember when she was pregnant?
A. Yes. She was pregnant last year.
Q. So 2007?
A. Yes, 2006 through 2007.

When Plaintiff read this information, it reminded her that Dawn Testa had children during Plaintiff's tenure at Pier One and that Ms. Testa has discoverable information about Cindy Baldwin and Ms. Baldwin's reaction to the children situation. Plaintiff had no recollection of any employees of Pier One having an issue with Ms. Baldwin until the deposition of Ms. Baldwin.

This was exactly the scenario Plaintiff contemplated when she requested that the parties extend the discovery date. Information was obtained at the deposition of Ms. Baldwin that necessitated an additional deposition. This additional deposition would not be any longer than 30-60 minutes and does not burden the Defendant to take said deposition of Ms. Testa. Further, it was Defendant's choice to have out-of-state council represent them. Defendant does have in-state council and easily could have in-state

council at the deposition. Plaintiff should not be penalized for Defendant complaining that out-of-state council has to have "any eye towards travel." As soon as Plaintiff obtained the name of the Ms. Testa, which was one (1) day after she received and reviewed the transcripts, Plaintiff immediately notified Defendant of her desire to depose Ms. Testa. The time period in which the deposition could not be helped due to the closure of discovery. Five (5) days should be enough time in which to prepare a witness for a deposition.

<u>Karol Pruett</u>

At the January 4, 2008 depositions, it was learned for the first time that Plaintiff was not performing up to Pier One standards. Up to this point, Defendant had only stated that Plaintiff was terminated for being dishonest when she left the store on April 29, 2005. No past performance issues had been raised, including the proper method of disciplining a store manager (verbal versus written), and therefore it was not needed to depose Plaintiff's most recent manager (Karol Pruitt) as to Plaintiff's prior performance or to proper methods in disciplining a store manager. In fact, at the conference with Justice Torres, Defendant was asked whether there were prior performance issues and Defendant went into great detail about performance issues that had not been raised other than in the depositions. As soon as Plaintiff read the transcript and heard the statements by Defendant, it was determined that Ms. Pruett needed to be deposed to rebut these new issues. In all documents received up to the time of the depositions, no mention was made that Plaintiff was not performing up to standards. The answer to Plaintiff's complaint that was filed by Defendant did not list any prior performance issues in the answer itself or in the defenses. In Defendant's reply memorandum to the Human Rights Commission,

attached as an Exhibit, there is no mention of Plaintiff's prior past performance issues. Nor was there any mention of Plaintiff's prior past performance issues in Defendant's settlement conference memorandum, also attached as an exhibit. Further, the performance review of Plaintiff by Susan Dubois, attached as an exhibit, rated Plaintiff as good. Though there were two (2) areas that needed improvement and the comment section listed skills that Plaintiff needed to address, there was no discussion in any section of the review that listed prior performance issues.

In fact, Susan Dubois testified that Plaintiff was not meeting said standards in some areas:

31

Q. Well, as of April 28, 2005 were you satisfied with Crystal as the store manager of Newport?
A. There had been no changes since her review at that point, but that was only, how many days?
Q. That's not my question. My question is, were you satisfied with Crystal's performance as store manager of Newport as of April 28, 2005?
A. She had areas of development.
Q. Were you satisfied with her performance?
A. I don't know how to say what is satisfied.
Q. Was she meeting the standards of Pier One?
A. In some areas, yes. In some areas, no.

In addition, at the deposition of Ms. Baldwin, Ms. Baldwin testified for the first time that she was not happy with the performance of Plaintiff. She also testified, for the first time that she verbally disciplined Plaintiff but did not put any thing in writing:

52

Q. Now, I want to just ask you some questions about conversations you had with Crystal and basically conversations you had with Crystal. Now, up to the review on April 19, 2005, were you satisfied with the performance of Crystal as store manager in Newport?
A. I'm not sure what you mean by satisfied.
Q. Well, let me ask it a different way. Tell me

what your opinion was, as of April 18, 2005, of Crystal as a store manager of the Newport store?
A. She had some performance issues. She was, I had only supervised her at the end of the year, and during that time she had received the corrective action for the audit. I had, also had to give her a verbal that wasn't documented for not going to her own store one day. She went to another store and didn't tell me.



Q. Well, were you supposed to document any verbal counselling documentation?
A. No. It was an e-mail, and it was a note in her file. I verbally told her that she could not do that again. She just decided to go to another store one day, not her own store for personal reasons. I told her that was not acceptable and that she could not do that again.
Q. You told her that via an e-mail?
A. No, verbally we discussed it.
Q. Was that when she went to the Dartmouth store?
A. Yes.
Q. You stated that she didn't notify you that she was going there?
A. Yes.
Q. How did you find out she was going to the Dartmouth store?
A. She e-mailed me after she had been there.
Q. Did you e-mail her back?
A. Yes, and I asked her to give me a call, and we discussed it.
(PLAINTIFF'S EXHIBIT 8 MARKED FOR ID)
Q. Giving you what has been marked as Plaintiff's 8, is this the e-mail that you were speaking about?
A. Yes.



Q. The first part of it was Crystal e-mailing you to let you know that she was in the Dartmouth store?
A. Yes.
Q. That was at 10:25 a.m.?
A. Correct.
Q. She stated that she was in the Dartmouth store, because her car needed to be fixed; is that correct?
A. Yes.
Q. Was that the story that she gave you, or was that the explanation that she gave you when you spoke with

her on the phone?
A. Yes.
Q. Did you have any reason to believe that what she stated as her reason was untrue?
A. No.
Q. Now, in your response to her, which was at 11:15, you write, "I am only concerned with your schedule this week on the (S) drive. Is it current or correct?" What does that refer to?
A. The store managers posted their schedule on a shared drive. S stands for shared.
Q. What was your concern, do you remember?
A. Not exactly. No, I don't remember. I think it probably wasn't within the guidelines of the store manager, which is why I have, "Is it current or

55

correct," because we have guidelines that the managers were supposed to work.
Q. Responding to this e-mail, there isn't any language, or you haven't written anything that says that she should not be in the Dartmouth store; is that correct?
A. No. I discussed that with her when she called me.
Q. But you didn't put it in the e-mail?
A. No.
Q. If you knew she was in the Dartmouth store, was there reason why you didn't call her?
A. No.
Q. In fact, you were waiting for her to call you regarding this information, correct?
A. I responded to her e-mail, then asked her to call me.
Q. So you were waiting for her to call you?
A. Yes.
Q. Would it be fair to say that there was no urgency in discussing this situation?
A. I don't know if that would be fair to say, no.
Q. Well, if it was urgent, you could have called her in Dartmouth, correct?

56

A. I guess so.
Q. This was after the review that you had with Crystal, the yearly review, correct?
A. Yes, it was.

Q. So other than that one, getting back to what we were talking about earlier, other than the one written corrective action, were there any other issues that you had with Crystal's performance as a store manager up to April 18, 2005?
A. Yes.
Q. What was that?
A. We had a divisional meeting in March in Newport. The store was going to be the walk-through store. It required quite a bit of work from other store managers and the divisional team to fix the store, because it wasn't satisfactory. It wasn't clean. It wasn't merchandised well. It needed a lot of work. Crystal wasn't able to do that on her own and hadn't been able to do that. I had given her that feedback back in March, back when that was over, and that was in March.
Q. Did you give her a corrective warning?
A. No.
Q. Any feedback?
A. No.

57

Q. Correct me if I'm wrong, that sounds like a serious oversight on Crystal's part; would you agree?
A. No. I don't know what you mean by that. I don't know for her what -- I guess if you could rephrase the question.
Q. Well, you were concerned that the store wasn't in the condition you expected it to be; is that correct?
A. Yes.
Q. You did not draft or put anything in her file regarding any type of corrective action; is that correct?
A. Yes.
Q. That's before the April 19, 2005 review?
A. Yes.
Q. Anything else?
A. No.
Q. Up to April 18, 2005, were you having any thoughts or opinions as to whether Crystal should continue as the manager of the Newport store?
A. No.
Q. So it would be safe to say you were satisfied with her performance up to April 18, 2005?
A. I guess so. I'm not, I don't know what you mean by satisfied. So I guess I can't really answer

that question.

58

Q. Were you happy with her performance?
A. No.
Q. Up to April 18, 2005, no?
A. No.
Q. Other than those two examples that you gave me, being the walk-through store and the -- strike that. Other than the walk-through store and the corrective action that you drafted, what else were you dissatisfied with, if anything?
A. Well, her performance was, to be on a corrective action, it's not good, obviously, for a store manager. So she wasn't, she needed to improve and to change in order for her to be more successful in her position. That was the discussion that we had when we did her review. Does that answer your question?
Q. Just so I'm clear, on February 18 you drafted a corrective action; is that correct?
A. Yes.
Q. That was regarding her performance in the purchase of her store?
A. That was regarding her audit.
Q. Well, did you draft any type of written corrective action regarding her performance between the time you started at Pier One and April 18, 2005?

59

A. Other than that, no.
Q. Other than the February 18?
A. Yes.
Q. I thought you just stated that was because of her audit?
A. Well, her performance is included in that. It was based upon her performance and her needing to correct her behavior, things she wasn't doing in reference to an audit that was done to find out these things.
Q. You did not provide her with any other written corrective action up through her review on April 19, 2005; is that correct?
A. Yes.
Q. Now, when you met with her on April 19, 2005, did you have the review already drafted and ready to give to her?
A. I'm not sure. I believe I probably did.

Q. Now, when you signed the, when you signed the review, that is dated 4/19/05 --
A. Okay.
(PLAINTIFF'S EXHIBIT 9 MARKED FOR ID)
Q. What has been marked as Plaintiff's 9, is that, I think we discussed this, you said this was the review that you gave Crystal on 4/19?



A. Yes.
Q. If you look at the last page, it's dated 4/19 with your signature?
A. Yes.
Q. You wouldn't have dated this document -- strike that. The day you signed this would have been the day you dated it; is that correct?
A. Yes.
Q. Crystal also signed it on 4/19?
A. Yes.
Q. Would you have given this document to Crystal to sign before you signed it?
A. At that moment, possibly, where she might have signed it or I signed it, or we might have signed it at the same time.
Q. Does this refresh your memory as to when you had prepared this document, whether it was before the 19th or after the 19th?
A. It would have been before the 19th or on the day of the 19th. It would not have been after.
Q. It would have been before you met with Crystal you would have prepared this document?
A. Yes.
Q. You would have given the grades, comments, everything else before you met with Crystal on the



19th?
A. Yes.
Q. Okay. Now, when you gave her the corrective action on February 18, could one of the options have been to terminate her rather than to give her a corrective action?
A. Possibly. I don't know.
Q. But that would have been a possible disciplinary action, and you chose to not terminate her but to provide her with a corrective action; is that correct?
A. Yes.
Q. Then you stated that there were no other

corrective actions until, between the time period of February 18 and the review, there were no other corrective actions?
A. Yes.
Q. Then on February 19 you met with Crystal; you discussed her performance; is that correct?
A. No.
Q. You didn't discuss her performance?
A. No, I did not meet with her on February 19.
Q. I'm sorry. April 19, you met with Crystal?
A. Yes.
Q. You discussed her performance?
A. Yes.

62

Q. You gave her your review, and even though you weren't happy with her, even though her performance wasn't up to your expectations, you still gave her a good for her -- yes, a good for her review; is that correct?
A. Yes.

Plaintiff should not have to guess every possibility that Defendant will raise in its case. That is the reason for discovery and conduction depositions. Plaintiff did this and as soon as it was known that Defendant was going to raise past performance issues, additional discovery (depositions) was requested.

In closing, Plaintiff is requesting to depose only two (2) additional witnesses on information that was obtained at the January 4, 2008 depositions of Ms. Baldwin and Ms. Dubois and on information that was obtained at the conference with Justice Torres. These witnesses would have been deposed earlier if the information as stated above was received earlier. Further, there is no prejudice to Defendant and Defendant would have plenty time to prepare for said depositions that would take no more than two (2) hours total.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to overturn the granting of Defendant's motion to quash the depositions of Karol Pruett and Dawn Testa or in the alternative to extend the closure for discovery to allow Plaintiff to take said depositions. If Plaintiff's motion is granted, Plaintiff also requests that she be allowed to take said depositions and include any relevant testimony received in her objection to Defendant's motion for summary judgment before the motion is heard.

PLAINTIFF
By her Attorney,

/s/ Bruce P. Gladstein Esq.
BRUCE P. GLADSTEIN, ESQ. (#5272)
750 EAST AVENUE
PAWTUCKET, RI 02860
(401) 722-9900 tel.
(401) 722-9919 fax

**CERTIFICATION**

I hereby certify that on the ____day of February 2008, I mailed a true copy of the within, by regular mail, postage prepaid:

Jamie Laporte, Esq.
Adler Pollock & Sheehan
One Citizens Plaza 8th Floor
Providence RI 02903

Russell D. Cawyer, Esq.
Kelly Hart & Hallman LLP
201 Main Streets, Suite 2500
Fort Worth TX 76102

/s/ Bruce P. Gladstein Esq.
Bruce P. Gladstein Esq. (#5272)