2006
RICHR

STATE OF RHODE ISLAND
COMMISSION FOR HUMAN RIGHTS
Attention: Marlene Colon Toribo
180 Westminster Street
Providence, RI 02903

RE: RICHR # 06 ESE 131
EEOC NO.: 16JA60059
Crystal Vasconcellos v. Pier 1 Imports (U.S.), Inc. and Cindy Baldwin

Dear Ms. Toribo:

This letter constitutes the response of Pier I Imports (U.S.), Inc. ("Pier 1") to the Charge of Discrimination filed by Crystal Vasconcellos ("Ms. Vasconcellos"). Pier 1 denies that it discriminated against Ms. Vasconcellos on the basis of her sex or any basis.

Ms. Vasconcellos was hired as a Sales Associate, and then Associate Manager in Pier 1's N. Dartmouth store on September 17, 2001. As an Associate Manager, her performance was good; she was able to manage the team effectively, was great with customers, and had a good eye for visual merchandising. As a result of her satisfactory performance, the decision was made to promote her to Store Manager of the Newport, RI store on July 14, 2002. On April 29, 2005, Ms. Vasconcellos left the store early to go home without telling her Regional Manager, Cindy Baldwin ("Ms. Baldwin"), female. When Ms. Baldwin called the store that afternoon to talk to Ms. Vasconcellos, she was told that Ms. Vasconcellos had left for the day; however, Ms. Vasconcellos told Ms. Baldwin that she had gone to the bank and was not intending to leave for the day. Upon further investigation and conversation with Ms. Vasconcellos, it was determined that Ms. Vasconcellos had attempted to mislead and deceive her supervisor about her intent and activities on April 29, 2005. She ultimately admitted that rather than merely being temporarily away from the store to make a bank deposit, she had intended to leave for the day, but after Ms. Baldwin called, she returned to the store and went to the bank instead.

## Background

Pier 1 is a specialty retailer of imported home furnishings and decorative accessories. All Pier 1 employees, including managers, are referred to as associates. Pier 1 is committed to providing a work environment for its associates that is free from any type of discrimination or harassment. To that end, Pier 1 has implemented and abides by the policies that follow:

**Equal Employment Opportunity Policy.** Pier 1 is an equal opportunity employer. Pier 1 is committed to providing equal employment opportunity to associates and applicants for employment without regard to sex (including pregnancy), national origin, race, color, religion, age, sexual orientation or disability. This policy extends to all terms and conditions of

employment, including, but not limited to, hiring, placement, promotion, termination, corrective action, layoff, transfer, leave of absence, compensation and training. (Exhibit A).

**Open Door Policy.** Consistent with its Equal Employment Opportunity Policy, Pier 1 maintains an Open Door Policy. This policy encourages associates to discuss any job-related concern, including discrimination or harassment, with any Pier 1 Manager including a Human Resources Manager. To make it easier for associates to report concerns, Pier 1 has provided its associates with a "1-800" telephone number. Upon the receipt of a complaint or concern, a member of the human resources department initiates a prompt and thorough investigation to determine what, if any, action should be taken. Pier 1 does not retaliate against any associate for reporting harassment or discrimination. (Exhibit B).

**Communication of Policies.** Every Pier 1 associate is made aware of Pier 1's policies and procedures with Associate Handbook detailing basic information about Pier 1's policies, expectations, and rules of conduct. Every store also has a communications bulletin board in associate break areas with information posted to advise or remind associates of organizational announcements, policies and procedures. In addition, store management has access to on-line policies and procedures.

**Pier 1's Organizational Structure.** Each store is run by a Store Manager who is responsible for the day-to-day operations of the store. The Store Manager supervises the Senior Assistant Store Manager (if any), Manager in Training (if any), Assistant Managers and Sales Associates. The Store Manager reports to a Regional Manager.

**Store Manager Job Description.** The primary responsibility of the Store Manager is to provide leadership and management in all aspects of store operations for the maximization of store sales, customer service and profits. The Store Manager is responsible for daily operations of the store including, but not limited to, sales and service management, people management and development, and visual merchandising management. This includes staffing and scheduling to the needs of the store, training associates and management, maintaining high standards of conduct, effectively managing damages and controlling shrink, effectively executing promotional merchandising plans, adhering to Pier 1's daily interior and exterior maintenance guidelines, maintaining aisles according to Pier 1's standards, and ensuring timely and accurate completion of Company and Regional Manager direction. (See Exhibit C).

## FACTS

Ms. Vasconcellos was hired on September 17, 2001, to work as a Sales Associate in Pier 1's North Dartmouth, Massachusetts store. She resigned only four days later, on September 21, 2005, for personal reasons (*i.e.*, she was working two jobs and decided to stay with her other job). On October 22, 2001, Ms. Vasconcellos was rehired in the same store as an Associate Manager. After working as an Associate Manager in North Dartmouth for several months, Ms. Vasconcellos was promoted to Store Manager of Pier 1's Newport, Rhode Island store on July 14, 2002.

On April 29, 2005, there was a truckload sale at a neighboring store, and Ms. Baldwin called Ms. Vasconcellos at about 3:30 p.m. to ask her if there was any merchandise at Newport that she wanted to have delivered to the truckload sale. Ms. Vasconcellos was scheduled until

approximately 5:00 p.m. that afternoon. When Ms. Baldwin called, she was told by an Assistant Manager that Ms. Vasconcellos had already left for the day. Several minutes later, Ms. Vasconcellos returned Ms. Baldwin's telephone call, and told her that she had merely been to the bank and had not left for the day. Ms. Baldwin thought that something seemed unusual about the situation so she went to the Newport store that evening to find out what was going on. When she arrived, Jody Graham ("Ms. Graham"), Assistant Manager appeared upset and uncomfortable. She told Ms. Baldwin that the events of that afternoon had made her uncomfortable. She said that Ms. Vasconcellos had not said anything about going to the bank when she initially left. In fact, when she left, she had her handbag, keys, and said good-bye. She appeared to be leaving for the day. Ms. Graham felt that she was placed in an awkward position, but felt it was best to be honest.

When Ms. Baldwin pulled Ms. Vasconcellos timecard, it was found that Ms. Vasconcellos had, in fact, clocked out for the day. If she was simply going to the bank, the time card would not have shown Ms. Vasconcellos as having clocked out because making the bank deposit is working time. In addition, Ms. Vasconcellos did not tell anyone that she was going to the bank.

Ms. Baldwin spoke with Ms. Vasconcellos about the events of that day. Ms. Vasconcellos said that she was not feeling well and decided to leave early for the day. After Ms. Baldwin called, she returned to the store and got some money to take to the bank for change. After she returned from the bank, she called Ms. Baldwin and told her that she had gone to the bank, even though her true intention was to leave for the day. Ms. Vasconcellos provided a written statement confirming that she merely informed her manager she had been at the bank and did not advise that she had intended to leave for the day. A copy of Ms. Vasoncellos' statement is attached at (Exhibit D). The statement also confirms that when her Regional Manager asked what her intention was when she left on Friday, she was not truthful. Ms. Vasconcellos wrote, "Cindy questioned what my intention was for that Friday evening and I explained I was going to the bank. With more questions I hesitantly let her know my true intention was to leave for the day." She, in fact, had no intention of going to the bank until after Ms. Baldwin called the store. Because of her admitted attempt to deceive and mislead her Regional Manager, the decision was made to separate Ms. Vasconcellos' employment for violation of company rule or policy, effective May 5, 2005.

## ARGUMENT

In her charge, Ms. Vasconcellos asserts that she was subjected to discriminatory terms and conditions of employment. This simply is not true. Ms. Vasconcello's admitted in her written statement that she mislead Ms. Baldwin about her true intentions, and the timecard clearly reflects her clocking out before the end of her shift on April 29, 2005. This deception is a legitimate, non-discriminatory reason for discharge.

## CONCLUSION

Ms. Vasconcellos' charge of discrimination is utterly and completely without merit. Pier 1 did not discriminate against Ms. Vasconcellos on the basis of her sex or any other basis. Ms.