always talked like, "I didn't really know what to do." She didn't say anything, no.

Q. Did Jody ever say or do anything that gave you the impression that she felt she was in a difficult spot being pitted between you and Cindy Baldwin?

MR. GLADSTEIN: Objection. You can answer.

A. No.

(DEFENDANTS' EXHIBIT 25 MARKED FOR ID)

Q. Handing you a document that's been marked Defendants' 25, have you ever seen Defendants' 25 before?

A. Yes.

Q. What is it?

A. It's a written corrective action.

Q. What manager gave you the written corrective action?

A. Cindy.

Q. What were you being written up for in Defendants' Exhibit 25?

A. An audit to my store.

Q. Tell me what, tell me why you were written up.

A. When an audit was performed on my store, they found things that they felt were unsatisfactory.

Q. What were the things that were described to you

EXHIBIT
2

A. Only when I requested my file, employee file.
Q. So you had never seen Defendants' 26 before, while you were employed by Pier 1 Imports?
A. Let me read it. Carol, with her verbal counselling, often recorded it afterwards, but we didn't read it and sign it.
Q. Were the items that are reflected in Defendants' Exhibit 26 items that Carol Pruitt addressed with you, even if you didn't see Exhibit 26?
A. We spoke about that.
Q. Did you speak about them on or around November 24, 2002?
A. I don't remember the date.
(DEFENDANTS' EXHIBIT 27 MARKED FOR ID)
Q. Handing you a document I've marked as Defendants' Exhibit 27, have you seen Defendants 27 before?
A. Again, when I received my, my file.
Q. Take a moment, take all the time you need to review Defendants' 27 and let me know when you're done.
A. Okay.
Q. The things that are reflected in Defendants' 27 are things that Carol Pruitt verbally discussed with you on or around December 9, 2002?
A. Yes.

(DEFENDANTS' EXHIBIT 28 MARKED FOR ID)

Q. Handing you a document I've marked as Defendants' Exhibit 28, does that appear to be a true and correct copy of the verbal counselling documentation that you were presented with on or about January 22, 2003?

A. Yes.

Q. Is that your signature at the bottom left-hand quadrant of Exhibit 28?

A. It is.

Q. Did you express any written disagreement with the substandard performance that is described in Exhibit 28?

A. No.

(DEFENDANTS' EXHIBIT 29 MARKED FOR ID)

Q. Now, handing you a document that I marked Defendants' Exhibit 29, does Defendants' 29 appear to be a true and correct copy of a verbal counselling documentation that you were given and signed for on or about February 27, 2003?

A. Yes.

Q. Did you express any written disagreement with the substandard performance that was described in Defendants' 29?

A. No.

(DEFENDANTS' EXHIBIT 30 MARKED FOR ID)

Q. Handing you the document we now marked as Defendants' Exhibit 30, does that appear to be a true and correct copy of a written corrective action that you were presented with and signed on November 21, 2003?

A. Yes.

Q. Did you express any written disagreement with the performance deficiencies that are reflected in Defendants' 30?

A. No.

(DEFENDANTS' EXHIBIT 31 MARKED FOR ID)

Q. Handing you a document we marked as Defendants' Exhibit 31, does that appear to be a true and correct copy of a store manager performance review that you were given on April 19, 2005 by Cindy Baldwin?

A. Yes.

Q. Ms. Vasconcellos, do you understand that if Pier 1 prevails in this lawsuit that you may be responsible for the court costs that are incurred in defending the lawsuit?

A. No.

Q. You didn't understand that if Pier 1 ultimately prevails from this lawsuit that you might be responsible for paying certain costs, like copies of deposition transcripts, witness fees for witnesses