UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CRYSTAL VASCONCELLOS | : | |
| | : | |
| v. | : | |
| | : | C.A. No.: 06-4016T |
| | : | |
| PIER 1 IMPORTS (US) INC., and | : | |
| CINDY BALDWIN, Individually and in her capacity | : | |
| and as an employee and Regional Manager of | : | |
| Pier 1 Imports (US) Inc. | : | |

MEMORANDUM IN SUPPORT OF OBJECTION TO SUMMARY JUDGMENT

Now comes the Plaintiffs in the above-entitled matter, and hereby objects to Defendants' Motion for Summary Judgment. The grounds for Plaintiffs' objection are set forth as follows.

## I. FACTS

CRYSTAL VASCONCELLOS ("Crystal" or "Plaintiff") was a store manager (Newport location) with Pier 1. On April 19, 2005, Crystal had her annual performance review with Providence Regional Manager Cindy Baldwin ("Baldwin"). Crystal received a "good" on her review which resulted in a pay increase. During the review process Baldwin and Crystal reviewed the past year and discussed accomplishments and opportunities for the future. One such opportunity was the organization of the stockroom area. Baldwin stated to Crystal that one of her future requirements was that she personally participate in all shipments coming into the building. Deposition of Crystal Vasconcellos, p. 57, l. 14-25; attached hereto as *Exhibit A*. Crystal had recently discovered she was pregnant. During said conversation Crystal disclosed to Baldwin that she was pregnant and the unloading of bulk merchandise off the back of the truck would

not be safe for the pregnancy. Crystal assured Baldwin that she would take part in all shipments, overseeing and delegating to her staff to ensure proper procedures. Deposition of Crystal Vasconcellos, p. 58, l. 1-10; attached hereto as _Exhibit A_. Crystal also disclosed her due date of December 17, 2005. Crystal told Baldwin that she would ensure her store's preparation and function throughout the holiday season in that her team had plenty of experience managing the store in her absence. Defendant's Undisputed Facts, number 23.

On April 29, 2005, Crystal was scheduled for the shift of 9 to 5:30. It was a slow sales day. Crystal had been experiencing sickness caused by the pregnancy all morning and afternoon. When her nighttime assistant manager arrived at 3 p.m., Crystal completed all required duties for the day, went over the goals and responsibilities of the night shift with said assistant and decided to leave for the day due to not feeling well, including vomiting. Defendant's Undisputed Facts, number 36. Crystal clocked out and left the building at approximately 4:15p.m. Defendant's Undisputed Facts, number 35. Crystal also had to drive to another Pier 1 store in Massachusetts to deliver some merchandise. Before Crystal reached her car in the parking lot, her assistant called her cell phone and informed her that Baldwin had just called the store. Crystal was not told that the call was important or that she needed to call Baldwin back immediately. Crystal went back into the building to return her call. Deposition of Crystal Vasconcellos, p. 67, l. 6-25; attached hereto as _Exhibit A_. When she entered the store, she decided that her store may need some additional ones for the weekend, and since the bank closed shortly for the weekend, she went to the bank before she returned Baldwin's call. Deposition of Crystal Vasconcellos, p. 68, l. 18-23; attached hereto as _Exhibit A_. The bank (located

next store to Pier 1) was very crowded, so Crystal decided to return to Pier 1 and call Baldwin. Deposition of Crystal Vasconcellos, p. 69, l. 12-17; attached hereto as *Exhibit A*. When Crystal phoned Baldwin the first thing Baldwin said was that “your staff said you left?” Crystal told Baldwin that she had ran over to the bank next door. She replied “Oh” and then she explained the reason for her call. Baldwin wanted Crystal to gather merchandise to help support a special event sale in the Seekonk, MA store. She also gave her several duties to prepare for weekend business. Defendant's Undisputed Facts, numbers 46-49. The call was ended and Crystal. clocked back in and completed all responsibilities given. Crystal left for the day after her original scheduled time. Defendant's Undisputed Facts, numbers 51-52.

On May 4, 2005, Crystal arrived for her scheduled shift at 7:00 a.m. Baldwin showed up around 10 a.m. and asked Crystal for a private conversation in her office. Baldwin explained she wanted to ask Crystal about their conversation from the previous Friday. Baldwin pulled out her timecard for that Friday and questioned why Crystal would punch out if she was going to the bank. Crystal explained to her at that point that her intention prior to her call was to leave for the day. Crystal explained that once she learned there were potentially more tasks to complete she returned to the store to ensure all responsibilities were managed. Deposition of Crystal Vasconcellos, p. 78-79, l. 10-25, 1-10; attached hereto as *Exhibit A*. At no time did Crystal intend to mislead Baldwin as to her whereabouts. Deposition of Crystal Vasconcellos, p. 81, l. 21-25; attached hereto as *Exhibit A*. Crystal apologized for not immediately disclosing her intention of leaving early. Deposition of Crystal Vasconcellos, p. 85, l. 17-24; attached hereto as *Exhibit A*. Crystal further stated that she was sorry if Baldwin felt that Crystal lied to her because it

was not her intention to be dishonest. Deposition of Crystal Vasconcellos, p. 86, l. 9-13; attached hereto as *Exhibit A*. After Baldwin's reaction when Crystal told her about her pregnancy, she was afraid to tell her that she left early because she was experiencing morning sickness. Once Baldwin learned about Crystal's pregnancy, she was less talkative with Crystal, she phoned the Newport store with less frequency, she was not as friendly with Crystal, and her visits to the Newport store decreased from every other day to once a week, and usually when Crystal was not at the store. Deposition of Crystal Vasconcellos, p. 95-96, l. 14-25. 1-11; p. 147-148, l. 16-25, 1-21; attached hereto as *Exhibit A*. Crystal also assured Baldwin that had she left early she would have keyed in the appropriate sick time in that store managers have unlimited sick time available. Defendant's Undisputed facts number 33.

Baldwin then excused herself to utilize Crystal's office to contact Human Resources as well as her superior the District Manager, Susan Dubois, on how to handle the situation. Defendant's Undisputed Facts, number 72. On May 5, 2005, Crystal arrived for her 9:00 a.m. shift at 8:40 a.m. Baldwin was already at the store when Crystal arrived. Crystal clocked in and began her opening duties. Baldwin came into Crystal's office and closed the door. She immediately disclosed "the company has decided to separate your employment due to dishonesty, effective immediately." Defendant's Undisputed Facts, number 73.

Within two (2) weeks of Crystal's pregnancy being disclosed, she was terminated after approximately four (4) years of service. Even though this was the first incident of any type of claim of dishonesty being alleged, Crystal was not given any type of corrective action before she was terminated.

## II. STANDARD OF REVIEW

Summary judgment is only appropriate when the pleadings and other submissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party opposing a motion for summary judgment must establish the existence of a genuine issue for trial by setting forth specific facts which, if established at trial as true, would entitle him to prevail on his claim. He may not rely on mere allegations to defeat such motion. *Floyd v. Farrell,* 765 F.2d 1, 5 (1st Cir. 1985). "To demonstrate that no genuine issue of material fact exists, the moving party must point out 'an absence of evidence supporting the nonmoving party's case.'" *Daury v. Smith*, 842 F.2d 9, 11 (1st Cir. 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)).

## III. ARGUMENT AND AUTHORITIES

### A. Plaintiff has established a Prima Facie case of pregnancy discrimination

In the Pregnancy Discrimination Act (PDA), 42 U. S. C. § 2000e(k), Congress explicitly provided that, for purposes of Title VII, discrimination "'on the basis of sex'" includes discrimination " of or on the basis of pregnancy, childbirth, or related medical conditions." n3 "The Pregnancy Discrimination Act has now made clear that, for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex." *Newport News Shipbuilding & Dry Dock Co.* v. *EEOC*, 462 U.S. 669, 684 (1983).

In Title VII cases, "the burden-shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 668 (1973) * * * allocates burdens of production and orders the presentation of evidence so as

'progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.'" Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995). Under the McDonnell analysis the employee has the initial burden of establishing a prima facie case demonstrating that the employer has discriminated against him or her for a proscribed reason. See McDonnell Douglas Corp., 411 U.S. at 802, 93 S. Ct. at 1824, 36 L. Ed. 2d at 677. The burden placed on the complainant at this stage is not especially onerous and requires that the employee demonstrate that (1) he or she belongs to a protected class, (2) he or she was qualified for the position, (3) despite the requisite qualifications, he or she was discharged from the position, and (4) the position remained open and was ultimately filled by someone with roughly equivalent qualifications to perform substantially the same work. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S. Ct. 2742, 2746-47, 125 L. Ed. 2d 407, 415-16 (1993); see also Resare v. Raytheon Co., 981 F.2d 32, 42 (1st Cir. 1992); Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148, 153 (1st Cir. 1990).

In the case at hand, Defendant attempts to argue that Plaintiff can not meet her burden as to parts: (2) her job performance was satisfactory, and (4) the position remained open and was ultimately filled by someone with roughly equivalent qualifications to perform substantially the same work. Each of these parts will be discussed in turn. Plaintiff clearly was performing up to the standards of Pier 1. On April 19, 2005, Baldwin provided Plaintiff with a performance review of her work performance up to that date. In said review, Plaintiff was given an overall score of "good", with comments as to what went well and areas of improvement. This performance review was completed before Baldwin was informed that Plaintiff was

pregnant. The First Circuit, in Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 147, 154 (1st Cir. 1990), has ruled that when an employee has been doing the job satisfactorily for a substantial period of time then his or her burden to prove such is not great, especially when the employee has been discharged. Defendant has shown no prior unsatisfactory performance reviews and attempts to mislead the court with two (2) past alleged performance issues Defendant had with Plaintiff.

First, there was a written corrective action due to an audit that occurred in February of 2005. Plaintiff does admit she received the corrective action, however, she also states that most of the items listed were inaccurate. Deposition of Crystal Vasconcellos, p. 155-157, l. 18-25, 1-25, 1-13; attached hereto as *Exhibit A*. If Defendant was so concerned with this written corrective action, then there would have been additional action taken other than a written corrective action, a good on her performance review and a raise. There was also no mention of the written corrective action due to the February audit in her performance review. Again, if this was as big an issue as Defendant is attempting to allege, there would have been some comments in her performance review or at least, she would not have received a "good" as her score. Perhaps, Plaintiff was "outstanding" and this audit lowered her score to "good." There is only one plausible reason why this written corrective action was not important enough to reference on Plaintiff's performance review and that was because it occurred before Defendant was informed about Plaintiff's pregnancy.

The second and more disturbing attempt by Defendant to prove that Plaintiff was not performing her job satisfactory was an incident that occurred in March of 2005 during a divisional meeting walk through of Plaintiff's store in Newport. Defendant is now

alleging how poor Plaintiff performed and how disappointed it was with her. However, at no point was Plaintiff given any type of corrective action or warning. In fact, Baldwin testified that she did not even provide any type of feedback to Plaintiff after the March, 2005 incident. Further, there was no mention of this situation in any part of Plaintiff's performance review. Deposition of Cynthia Baldwin, p. 56-57, l. 5-25, 1-14; attached hereto as *Exhibit B*. Deposition of Susan Dubois, p. 17-19, l. 20-25, 1-25, 1-15; attached hereto as *Exhibit C*. Again, this alleged poor performance by Plaintiff occurred before Defendant was informed of Plaintiff being pregnant. It was not until after Defendant was informed of said pregnancy that Defendant attempted to make this an issue.

Last, Plaintiff was never terminated due to the fact that her job performance was not satisfactory. Defendant has stated from the beginning that the only reason for terminating Plaintiff was for a violation of the code of conduct. Defendant's Undisputed Facts, number 74. It was not until this decision to terminate was made that Plaintiff's past performance was even mentioned. This will be discussed further in Part B below.

As for the notion that there is no proof that the position remained open and was ultimately filled by someone with roughly equivalent qualifications to perform substantially the same work, this is also incorrect. In response to Plaintiff's Supplemental Interrogatory 17(e) and 17 (f): "As for the store manager position referred to in the complaint, please state the following: Was anyone hired, appointed or promoted for the position during the time-period previously stated; and If someone was hired, appointed, promoted etc. for said position, please state the persons name, address, if they are still employed by Pier and a detailed description of his or her qualifications", Defendant submitted the following answers:

Therefore, Plaintiff has established a prima facie case of pregnancy discrimination.

**B. Plaintiff has established evidence of pretext**

Once a prima facie case of discrimination is established, a presumption that the employer unlawfully discriminated against the employee arises. See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207, 216 (1981). Next the burden of production, not persuasion, shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. See McDonnell Douglas Corp., 411 U.S. at 802, 93 S. Ct. at 1824, 36 L. Ed. 2d at 678; Resare, 981 F.2d at 42. If the employer offers such a justification, the presumption created by the employee's prima facie case disappears and the focus shifts back to the employee to demonstrate that the proffered reasons are a mere pretext for discrimination. Resare, 981 F.2d at 42.

"To satisfy this third prong, a plaintiff must do more than simply cast doubt upon the employer's justification." Id. The burden does not require, however, a complainant to "come forward with evidence of the 'smoking gun' variety." Id. An employee can establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256, 101 S. Ct. at

1095, 67 L. Ed. 2d at 217. Despite this burden shifting, the employee has the ultimate burden of persuasion in these matters. Id. at 253, 101 S. Ct. at 1093, 67 L. Ed. 2d at 215. Nevertheless, in situations in which the elements of a sufficient prima facie case combine with the fact finder's belief that the basis for dismissing the employee was pretextual, particularly if "accompanied by a suspicion of mendacity," the fact finder is permitted "to infer the ultimate fact of intentional discrimination." Hicks, 509 U.S. at 511, 113 S. Ct. at 2749, 125 L. Ed. 2d at 418; Woodman, 51 F.3d at 1092.

The reason provided by Defendant for the termination of Plaintiff could be viewed as a legitimate nondiscriminatory reason. Defendant's stated reason and the only reason ever provided was that it terminated Plaintiff because she was dishonest with Pier 1. Defendant's Undisputed Facts, number 74. However, the question that arises and what this entire case revolves around, is whether the reason offered by Defendant was the actual cause of her termination or was just an excuse to terminate Plaintiff because she was going to be out of work due to the birth of her child around Christmas, which is the busiest season of the year for Pier 1.1[1] Based on the following, there are numerous questions of fact that need to be determined by a jury, who will be able to weigh the evidence and judge the credibility of the witnesses.

When a plaintiff claims discrimination and is able to make out a prima facie case, the courts must be "particularly cautious" when granting an employer's motion for summary judgment when the motion is based on the employer's stated nondiscriminatory reason. Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir. 1983). When the nonmoving party is able to show pretext by indirect or direct evidence,

1[1] Plaintiff had to reschedule the depositions of Baldwin and Dubois due to their unavailability during the busy Christmas season

the trial courts should use restraint in granting summary judgment where discriminatory animus is in issue. Id. It does not require independent evidence of discriminatory animus. The court may infer discrimination from the prima facie portion along with compelling proof of the pretextual nature of the explanation provided by the defendant. Pierce v. Sears, Roebuck and Co, 2005 WL 226224 (D. Me 2005).

One way of giving rise to an inference of casual connection is by showing a close temporal proximity between when the Plaintiff informed Defendant that she was pregnant and the date when Defendant terminated Plaintiff. Oliver v. Digital Equip. Corp., 846 F/2d 103, 110 (1st Cir. 1988). In the case at hand, there was a 12 day period from when Defendant was informed Plaintiff was pregnant until the date Defendant terminated her. This was after Plaintiff had worked for Defendant for approximately four (4) years.

This Honorable Court should also view the sequence of events that led up to Plaintiff' termination. Reno v. Bossier Parish Sch. Bd., 520 U.S. 471 (1997). First, there was a change in the way Defendant viewed Plaintiff's work performance from before Defendant was informed of Plaintiff's pregnancy to after said date. Up to the date of Plaintiff's performance review on April 19, 2005, Plaintiff was working at a performance level that met the standards set by Pier 1. At said review, Plaintiff received an overall score of "good". Performance Review; attached hereto as *Exhibit E*. She did have two (2) areas that needed improvement, however, it did not seem to be of any concern to Defendant and Plaintiff received a raise. In addition, as of said review, Plaintiff had received no other documented warnings in Plaintiff's file other than the warning for the audit that occurred in February of 2005 since Baldwin became Plaintiff's supervisor. Deposition of Cynthia Baldwin, p. 59, l. 11-14; attached hereto as *Exhibit B*. The

warning received for said audit was not even warranted. Plaintiff spoke with her employer and explained that most of what was contained in said audit was inaccurate. Deposition of Crystal Vasconcellos, p. 155-157, l. 18-25, 1-25, 1-13; attached hereto as *Exhibit A*. No further mention or corrective action was taken due to said written corrective action, including no reference to it in the April 19, 2005 performance review. Based on the score of "good", Plaintiff received a raise. However, once Defendant was informed of Plaintiff's pregnancy, not only was the audit a big issue with Defendant but it also then produced another poor work performance that had occurred before Plaintiff told Defendant she was pregnant. This was an incident that occurred in March of 2005 during a divisional meeting walk through of Plaintiff's store in Newport. Defendant is now alleging how poor Plaintiff performed and how disappointed it was with her. However, at no point before Plaintiff gave notice of her pregnancy was she given any type of corrective action or warning. In fact, Baldwin testified that she did not even provide any type of feedback to Plaintiff after the March, 2005 incident. Further, there was no mention of this situation in any part of Plaintiff's performance review. Deposition of Cynthia Baldwin, p. 56-7, l. 5-25, 1-14; attached hereto as *Exhibit B*. Deposition of Susan Dubois, p. 17-9, l. 20-25, 1-25, 1-15; attached hereto as *Exhibit C*. It was not until after Defendant was informed of said pregnancy that Defendant attempted to make this an issue.

Second, there was a difference in how Baldwin interacted with Plaintiff before and after Baldwin was informed of the pregnancy. Before Baldwin was informed of the pregnancy, she and Plaintiff had a very good working relationship. Baldwin was personable, very friendly, always smiling, always conversational, and seemed very open

towards Plaintiff. Deposition of Crystal Vasconcellos, p. 29, l. 5-25; attached hereto as _Exhibit A_. Baldwin would call the store everyday and in that she lived only a few streets over from the store, would usually drop by the store 1-2 times a week. Deposition of Crystal Vasconcellos, p. 30, l. 1-25; attached hereto as _Exhibit A_. After Plaintiff informed Baldwin that she was pregnant, their interaction changed. Plaintiff was uncomfortable speaking to Baldwin about the pregnancy. When she told Baldwin, Baldwin seemed put off by her being pregnant. Her mannerisms changed, she was not as cherry, and the tone of her voice changed. Deposition of Crystal Vasconcellos, p. 95-96, l. 14-25, 1-9; p. 147-148, l. 16-25, 1-21; attached hereto as _Exhibit A_. In addition, she did not visit the store after the pregnancy announcement and her phone calls to the store also decreased. Deposition of Crystal Vasconcellos, p. 30, l. 17-22; p. 147-148, l. 16-25, 1-21; attached hereto as _Exhibit A_.

Third, is the investigation done by Defendant regarding the incident that occurred on April 29, 2005. This is the incident in which Defendant claims Plaintiff was dishonest and promptly terminated her. Baldwin controlled the investigation by deciding what information was to be sent to the other people involved in the decision to terminate Plaintiff and by questioning employees in such a manner as to obtain the information she wanted to obtain. She was the only person who investigated the situation. She was the only person who spoke with any of the witnesses. Deposition of Cynthia Baldwin, p. 114, l. 10-13; attached hereto as _Exhibit B_. She did not obtain a statement from Jody Graham until after the decision to terminate Plaintiff was made. She did not speak with Plaintiff until 5 days after the incident occurred. She did not send an email to others regarding any of the facts she was personally told until after she received Plaintiff's

statement. She had decided that Crystal was dishonest from the outset of her investigation, even before she had spoken to Plaintiff. Deposition of Susan Dubois, p. 42, l. 8-11; attached hereto as *Exhibit C*. She was also the person whose attitude changed when she was informed about Plaintiff's pregnancy.

It can be argued that Plaintiff should have been more forthright. However, she had a valid reason for not being so forthright. She clearly stated that she was not as forthright as she should have been because she was uncomfortable telling Baldwin that she left early because of morning sickness. No one at Pier 1 cared or took into consideration her reasons for telling Baldwin what she did. They never questioned her as to why she felt uncomfortable speaking to Baldwin about her condition due to her pregnancy. Deposition of Susan Dubois, p. 44-45, l. 16-25, 1-22; p. 52-53, l. 10-25, 1-21; attached hereto as *Exhibit C*. All Defendant was concerned with was the outcome and not the reasons. This was because Defendant had their chance to terminate a pregnant manager. The details as to why Plaintiff believed she had to protect her self would have just gotten in the way.

As to the portion of Plaintiff's explanation as to telling Baldwin that she told Jody Graham she was going to the bank when she did not. Plaintiff stated that she mistakenly told this to Baldwin. Deposition of Crystal Vasconcellos, p. 92, l. 2-23; attached hereto as *Exhibit A*. This information was never passed on by Baldwin. Plaintiff told Baldwin that she was sorry if Baldwin felt she was being dishonest. Deposition of Crystal Vasconcellos, p. 86, l. 11-13; attached hereto as *Exhibit A*. This information was never passed on by Baldwin. Plaintiff stated that she was leaving early but that she had to deliver merchandise to another store which would have taken most of the time she left

early. Deposition of Crystal Vasconcellos, p. 66, l. 18-21; attached hereto as *Exhibit A*. This information was never passed on by Baldwin

Further, even if Plaintiff was not being completely honest in her statement, termination of her employment was too severe in this case. There was no monetary loss to Defendant. Store managers were given unlimited sick time. This was also the first instance in which Plaintiff was ever accused of not being completely honest. In fact, Defendant never reviewed her work history to see if this situation ever had arisen. Finally, Plaintiff had worked for Pier 1 for approximately 4 years. She was never an unsatisfactory employee. She should have been given the benefit of the doubt. If she was not pregnant, she would have been.

Fourth and last, Defendant's version of how they were informed of Plaintiff's pregnancy is extremely implausible. During the review process, Plaintiff and Baldwin reviewed the past year and discussed accomplishments and opportunities for the future. One such opportunity was the organization of the stockroom area. Baldwin stated to Crystal that one of her future requirements was that she personally participate in all shipments coming into the building. Deposition of Crystal Vasconcellos, p. 57, l. 14-25; attached hereto as *Exhibit A*. Based on this new requirement, Plaintiff told Baldwin that she could supervise the shipments but could not personally participate in them because she was pregnant. However, Baldwin stated that there was never any mention of being personally involved in the shipments and that Plaintiff just blurted out that she was pregnant. Crystal also disclosed her due date of December 17, 2005. This is the exact opposite of what Baldwin testified had happened. Baldwin testified she never asked or told when Plaintiff's was due and in fact, had no concerns as to when Plaintiff would be

out of work due to her giving birth. Deposition of Cynthia Baldwin, p. 66-7, l. 17-25, 1-19; attached hereto as *Exhibit B*. Shortly thereafter, Baldwin spoke with her supervisor, Susan Dubois and told her that Plaintiff was pregnant. Dubois stated that she needed to know about an employee's pregnancy because she would need that type of information for scheduling purposes. Deposition of Susan Dubois, p. 29, l. 1-16; attached hereto as *Exhibit C*. At this point, one would expect that Defendant would need to know or have asked when Plaintiff was due so that proper scheduling and procedures could be put into place. However, Dubois also did not ask or was she told when Plaintiff was due. Plaintiff was a manager of an entire store, has announced she is pregnant, and no one knows or cares to ascertain whether she is newly pregnant or could go into labor in days. Dubois even stated that she did not know whether Plaintiff was due in 6 days or 6 months. Deposition of Susan Dubois, p. 29-30, l. 16-25, 1-22; attached hereto as *Exhibit C*. Michele Trotter, who never spoke to Plaintiff, wrote in her notes that Plaintiff was early in her pregnancy. Deposition of Michelle Trotter, p. 76-77, l. 17-25, 1-9; attached hereto as *Exhibit D*.

**C. Conclusion**

For the reasons as stated above, the Plaintiffs respectfully request that the Defendants motion for summary judgment be denied on all counts as it relates to Pier 1.

**PLAINTIFF**
By her Attorney,

/S/ Bruce P. Gladstein___
BRUCE P. GLADSTEIN, ESQ. (#5272)
750 EAST AVENUE
PAWTUCKET, RI 02860
(401) 722-9900 tel.
(401) 722-9919 fax

## CERTIFICATION

I hereby certify that on the 28th day of February 2008, I mailed a true copy of the within, by regular mail, postage prepaid: Jamie Laporte, Esq., Adler Pollock & Sheehan, One Citizens Plaza 8th Floor, Providence RI 02903 and Russell D. Cawyer, Esq., Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth TX 76102.

/s/ Bruce P. Gladstein Esq.
Bruce P. Gladstein Esq.