**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CRYSTAL VASCONCELLOS** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 06-00484-T-LDA** |
| **PIER 1 IMPORTS (U.S.), INC., AND** | § | |
| **CINDY BALDWIN** | § | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO ITS**
**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF**

Summary judgment should be granted because, regardless of how Plaintiff characterizes her dishonesty (albeit a "mistake," "less than forthright," "apologetically failing to disclose," "unintentional dishonesty"), Plaintiff produced no evidence that Pier 1's legitimate nondiscriminatory reason for separating her employment was a pretext for pregnancy discrimination or that the decision maker lacked an honest belief Plaintiff had been dishonest.

## I. Plaintiff Failed to Establish a Prima Facie Case of Pregnancy Discrimination.

Plaintiff's objection and summary judgment response lacked any evidence that her duties as manager were replaced by a "comparably qualified person." Although Plaintiff's response directs the Court to Pier 1's Interrogatories as alleged proof of this element, Plaintiff failed to submit any proof on summary judgment. (Clerk's Dkt. No. 34, p. 8-9). Even if Plaintiff had properly identified her replacements, there is no summary judgment evidence of those individuals' qualifications or a comparison of those qualifications with Plaintiff's qualifications. This absence of any evidence that Plaintiff's replacement(s) were "comparably qualified," is fatal to Plaintiff's prima facie case and renders summary judgment appropriate as a matter of law.[1]

[1] *Barber v. Verizon New England, Inc.*, 2006 WL 3524465 (D.R.I. 2006) (granting summary judgment because plaintiff failed to establish a *prima facie* case of disability discrimination).

## II. Plaintiff Does Not Contest Pier 1's Legitimate Non-Discriminatory Reason.

Plaintiff concedes that Pier 1's stated reason for separating Plaintiff's employment (i.e., dishonesty) is a legitimate, non-discriminatory reason for its actions. (Clerk Dkt. No. 34, p. 10).[2] Consequently, Plaintiff must create a genuine issue of material fact that this legitimate, nondiscriminatory reason is false and pretextual.

## III. No Evidence of Pretext.

Plaintiff can only avoid summary judgment be creating a genuine issue of material fact that Pier 1's stated reason is false or pretextual.[3] She absolutely fails to satisfy this burden.

### A. Plaintiff Does Not Challenge Pier 1's Honest Belief that She Lied.

In assessing pretext, the court's focus is on whether the employer honestly believed its stated reason for its decision—not whether the misconduct at issue actually occurred.[4] Plaintiff concedes that she cannot challenge Pier 1's honest belief that she was dishonest:

> Q: My question was, can you identify any facts that lead you to believe that Ms. Baldwin did not have a sincere belief that you had lied to her?
> A: No.[5]

Moreover, there is no evidence that "Baldwin controlled the investigation . . . in such a manner as to obtain the information she wanted to obtain." (Clerk's Dkt. No. 34, p. 13). It is undisputed that Ms. Baldwin spoke with Jody Graham via telephone on April 29, 2005 and that Jody informed Ms. Baldwin that Plaintiff had gone home for the day. (Clerk's Dkt. No. 29-3, App. 72:23-25). Although Plaintiff argues to the contrary, the testimony she cites in her Response confirms that Ms. Baldwin talked to Jody Graham before the decision to separate

---

2 *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23 (1st Cir. 2001) (noting that discharge for dishonesty in attempting to mislead supervisor constituted a legitimate, non-discriminatory reason for the employee's discharge); *Cardona v. United Parcel Service*, 79 F.Supp.2d 35 (D. P.R. 2000).

3 *Quinones v. Buick*, 436 F.3d 284, 289-90 (1st Cir. 2006).

4 *Straugh*, 250 F.3d at 41 ("[A]t this point in the burden-shifting analysis the principal focus must be upon whether . . . the responsible Delta decision makers, ***reasonably believed*** that Straughn lied, ***rather than whether she actually lied.***")(emphasis in the original).

5 (Clerk's Dkt. No. 29-2, App. 46:17-20).

Plaintiff's employment had been made.[6] Despite these investigatory efforts, Plaintiff claims that Pier 1's investigation is flawed because: (1) Baldwin did not speak with Plaintiff until five days after the incident; and (2) did not send an email to the other decision makers regarding her investigation until after she received Plaintiff's written statement. Plaintiff's accusations are disingenuous given that five days is a relatively short period of time and any reasonable investigator would obtain a written statement from the employee charged with misconduct before informing others of the results of the investigation. Moreover, the summary judgment evidence demonstrates that Baldwin, Dubois, and Trotter spoke on several occasions during the course of the investigation. (Clerk's Dkt. No. 29-4, App. 85-91).

Plaintiff's claim that Ms. Baldwin failed to inform Ms. Dubois and Ms. Trotter that Plaintiff was "mistaken" or "inaccurate" is equally misplaced.[7] First, Plaintiff's characterization of her misconduct as "mistaken dishonesty" is irrelevant.[8] Moreover, Ms. Baldwin testified that she, Ms. Dubois, and Ms. Trotter discussed Plaintiff's "admissions that she had made inaccurate statements about the events occurring on April 29, 2005." (Clerk's Dkt. No. 29-4, App. 96 ¶ 9). It is also undisputed that all involved received and reviewed a copy of Plaintiff's handwritten statement. Simply put, there is no evidence that Pier 1's investigation was selectively conducted so as to "terminate a pregnant manager." This is especially true given that Plaintiff admitted that she cannot identify anything else Pier 1 should have done in investigating her misconduct.

---

[6] In her Response to Pier 1's Statement of Undisputed Facts, Plaintiff's Additional Disputed Fact claims that Baldwin never spoke to Jody Graham by phone on April 29, 2005. The deposition testimony cited by Plaintiff, however, clearly and unequivocally states that she called Jody Graham on April 29, 2005:

> "I called and asked for Crystal. The store assistant manager, Jody, I spoke with told me she had gone home for the day."

(Clerk's Dkt. No. 29-3, App. 72:23-25). This fact is also supported by Jody Graham's own statement wherein she confirms that Ms. Baldwin not only called her but personally stopped by the store to discuss the situation prior to any decision to separate Plaintiff's employment. (Clerk's Dkt. No. 29-4, App. 84).

[7] In her Response, Plaintiff claims that Baldwin also failed to inform Ms. Dubois and Ms. Trotter that Plaintiff "stated that she was leaving early but that she had to deliver merchandise to another store which would have taken most of the time she left early." (Clerk's Dkt. No. 34, pp. 14-15). No where in Plaintiff's cited testimony does she state that: (1) she was delivering merchandise to another store and (2) that delivery would have taken most of the time she left early. (Clerk's Dkt. No. 29-1, App. 21:18-21)

[8] As detailed above, the court's focus must be on the perception of the decision maker, Pier 1, not whether the misconduct at issue actually occurred. *Straughn*, 250 F.3d at 41.

(Clerk's Dkt. No. 29-3, App. 51:6-15).

Plaintiff also argues that Pier 1 acted too severely in this case by terminating her employment for a single instance of dishonesty.[9] In analyzing pretext, the Court should not "sit as super personnel departments, assessing the merits or even the rationality of employers' non-discriminatory business decisions."[10] Plaintiff's subjective belief that she "should have been given the benefit of the doubt" even if "she was not being completely honest in her statement"[11] or that the punishment was too severe because Plaintiff had never been previously warned about lying is not evidence of (nor is it relevant to establish) pretext.

**B. Plaintiff Does Not Establish a Causal Connection.**

Plaintiff also claims that suspicious timing, attitudes, and treatment (none of which are supported by the summary judgment record) create an inference of pretext. First, timing alone is insufficient to establish pretext.[12] Timing is even less significant in light of evidence that Plaintiff engaged in the misconduct between the time she disclosed her pregnancy and when her employment was separated.[13] Plaintiff correctly notes that there was twelve days between the date she disclosed her pregnancy[14] and the separation of her employment. Plaintiff, however,

---

9 *See Feliciano de la Cruz v. El Conquistador Resort and Country Club*, 218 F.3d 1, 8 (1st Cir. 2000) ("[e]ven if a rational trier of fact could infer from the evidence of pretest that El Conquistador's decision to fire Feliciano was "unfair," that proof is not sufficient to state a claim under Title VII.").

10 *Colon-Muriel v. Asociacion de Suscripcion Conjunta Del Seguro de Responsabilidad Obligatorio*, 499 F.Supp.2d 98, 108 (D. P.R. 2007) (citing *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988)).

11 (Clerk's Dkt. No. 34, p. 15).

12 *See Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1266 (10th Cir. 2001).

13 *Powers v. Tweco Products, Inc.*, 206 F.Supp.2d 1097, 1118 (D. Kan. 2002); *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (intervening unprotected conduct eroded any causal connection suggested by the temporal proximity between plaintiff's protected conduct and the adverse employment action.).

14 Plaintiff spends an inordinate amount of time pointing out inconsistencies in the testimony of Ms. Baldwin, Ms. Dubois, and Ms. Trotter as to how they were informed of Plaintiff's pregnancy. (Clerk's Dkt. No. 34, p. 15-16.) Despite Plaintiff's representations, Ms. Baldwin did not testify that "there was never any mention of being personally involved in the shipments and that Plaintiff just blurted out that she was pregnant. (Clerk's Dkt. No. 34, p. 15). To the contrary, Ms. Baldwin testified as follows:

> Q: Well, didn't she tell you she was pregnant after you told her that she needed to supervise—didn't She tell you that she was pregnant after you told her that she needed to participate in the unloading of the trucks?
>
> A: I told her that she needed to supervise them and yes, that's when she told me.

(Clerk's Dkt. No. 34-2, p. 4, [p. 64:24-25; p. 65:1-11). Second, with regards to whether Pier 1 asked about or knew Plaintiff's due date, any inconsistencies are immaterial for the purposes of summary disposition because the facts are

conveniently ignores that during this same period she was dishonest regarding the events of April 29, 2005.

Plaintiff's subjective and conclusory belief that Pier 1's attitude and treatment towards her changed after she announced her pregnancy is also insufficient to establish pretext.[15] There is no evidence that Pier 1 viewed Plaintiff's work performance differently. The April 19, 2005 manager Review expressly covered the period of February 2004 to February 2005. (Clerk's Dkt. No.29-3, App. 61-63). Thus, it is not surprising nor suspicious that the results of Pier 1's February 2005 retail audit of her store or the March 2005 divisional walk-thru and the state of Plaintiff's store was not included in a review that only covered up to February 2005 (i.e., January 31, 2005).[16] Actions occurring from February 2005 through January 2006 would be properly covered in the following year's review. Other than Plaintiff's subjective belief that Ms. Baldwin's mannerisms and tone of voice changed,[17] there is also no evidence that Ms. Baldwin treated Plaintiff differently after she announced her pregnancy. The fact that Ms. Baldwin's visits and phone calls to the store decreased during the month of April was simply because she was conducting on-site performance reviews of other managers throughout her district. (Clerk's Dkt. No. 29-4, App. 94, ¶ 3). Plaintiff does not (and cannot) contest this explanation for Baldwin's less frequent visits and calls to Plaintiff's store during this short time period.

For all the reasons raised in its Motion for Summary Judgment and this Reply, Pier 1 respectfully requests that summary judgment be granted on all of Plaintiff's claims.

---

viewed in the light most favorable to Plaintiff—i.e. Pier 1 knew her due date was December 17, 2005. That being said, the mere fact Pier 1 knew Plaintiff's due date does not establish pretext. Finally, in response to Plaintiff's statement that no one at Pier 1 knew or cared "to ascertain whether she is newly pregnant or could go into labor in days," surely Ms. Baldwin was able to visually ascertain that Plaintiff was not six months pregnant or about to go into labor, especially since Plaintiff was early in her pregnancy.

15 *Melendez v. Sap Andina y del Caribe,* 518 F.Supp. 2d 344, 359 (D. P.R. 2007).

16 A point confirmed by the deposition testimony of Ms. Dubois. (Clerk's Dkt. No. 34-3, p. 2 [p. 19:1-8]).

17 *See e.g. Minor v. Ivy Tech State College,* 174 F.3d 855 (7th Cir. 1999) (noting the danger in finding discrimination based on "nebulous impressions concerning tone of voice, body language, and other nonverbal, nontouching modes of signaling); *Hawthorne v. Sears Termite & Pest Control, Inc.*, 309 F.Supp.2d 1318 (N.D. Ala. 2003) (finding plaintiff's subjective impression of employer's tone of voice, conclusory); *Lewis-Webb v. Qualico Steel*, 929 F.Supp. 385 (M.D. Ala. 1996) (plaintiff's contention that employer's sarcastic tone of voice demonstrated sex bias was speculative at best).

Respectfully submitted,

/s/ Jaime J. LaPorte

Robert P. Brooks (#3721)
Jaime J. LaPorte (#6668)
Adler Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903-1345
Telephone: (401) 274-7200
Telefax: (401) 751-0604
rbrooks@apslaw.com
jlaporte@apslaw.com

-And-

Russell D. Cawyer *(Admitted Pro Hac Vice)*
State Bar No. 00793482
Kelly Hart & Hallman LLP
2500 Texas Commerce Tower
201 Main Street
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Telefax: (817) 878-9280
russell.cawyer@khh.com

**ATTORNEYS FOR DEFENDANT**
**PIER 1 IMPORTS (U.S.), INC.**

## CERTIFICATE OF SERVICE

To: Bruce P. Gladstein, Esq.
750 East Ave.
Pawtucket, RI 02860

I hereby certify that I filed Pier 1 Imports (U.S.), Inc.'s Reply Brief in Support of its Motion for Summary Judgment through the ECF system on the 12th day of March, 2008, and that notice will be sent electronically to the above-named counsel who is a registered participant identified on the Mailing Information for Case No. 07-484T-LDA.

/s/ Jaime J. LaPorte

*447557_1.doc*