UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CRYSTAL VASCONCELLOS | : | |
| | : | |
| v. | : | C.A. No. 06-484T |
| | : | |
| PIER 1 IMPORTS (U.S.), INC. | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

**Background**

Before this Court is Defendant's Motion for Summary Judgment (Document No. 28) pursuant to Fed. R. Civ. P. 56. In her Complaint, Crystal Vasconcellos ("Plaintiff") alleges three statutory counts of employment discrimination based on pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Rhode Island Fair Employment Practices Act ("FEPA"); R.I. Gen. Laws § 28-5-1 et seq.; and the Rhode Island Civil Rights Act of 1990 ("RICRA"), R.I. Gen. Laws § 42-112-1 et. seq.

Defendant filed its Motion for Summary Judgment and Memorandum of Law (Document No. 28) on February 11, 2008. Plaintiff filed her Objection to Defendant's Motion for Summary Judgment and supporting Memorandum (Document Nos. 33 and 34) on February 28, 2008. This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. A hearing was held on April 16, 2008. After reviewing the Memoranda submitted, listening to the arguments of counsel and conducting independent research, I recommend that Defendant's Motion for Summary Judgment be GRANTED.

**Statement of Facts**

The following undisputed facts are culled from the parties' Local Rule Cv 56(a) statements:

Plaintiff was hired by Defendant as an Assistant Store Manager on September 17, 2001. She was later promoted to Store Manager and assigned to Defendant's Newport store.

On February 10, 2005, Plaintiff's store was audited by her Regional Manager, Cynthia Baldwin, and a Zone Asset Protection Manager. As a result of deficiencies identified during the audit, Plaintiff received a written warning from Ms. Baldwin, i.e., a "written corrective action," on February 18, 2005.

On April 19, 2005, Ms. Baldwin met with Plaintiff to review her job performance for the period February 2004 to February 2005. Although it was noted that Plaintiff needed development in the areas of communication and people development, her performance was otherwise rated as good and her "overall performance rating" was good. During the evaluation meeting, Plaintiff and Ms. Baldwin discussed the processing of store shipments. Plaintiff's Dep. at 57. Ms. Baldwin requested that Plaintiff participate in the receipt of shipments to the store. Id. at 57-58. Plaintiff was agreeable but indicated she would have "limitations when it comes to the heavy furniture." Id. at 58. Ms. Baldwin asked why, and Plaintiff informed Ms. Baldwin that she was pregnant. Id.

In response to the news about Plaintiff's pregnancy, Ms. Baldwin asked "is that a good thing?" Id. Plaintiff responded that it was a "good thing." Id. Ms. Baldwin then asked Plaintiff if she could ask her a "personal question." Id. at 59. Plaintiff said "okay" and Ms. Baldwin said "I know in February you were just going through a break-up." Id. In February, Ms. Baldwin noticed that Plaintiff was upset, and Plaintiff told Ms. Baldwin that she was going through a "tough breakup." At the April 19, 2005 meeting, in response to Ms. Baldwin's question about her February break-up and subsequent pregnancy, Plaintiff "went into how it wasn't the same person and how this

was a good thing and how long I've known this person." Id. at 59-60. Plaintiff also volunteered to Ms. Baldwin that she was due "around Christmas" and that "it shouldn't be a problem because...[her] assistant manager...was comfortable handling the store in [her] absence." Id. at 61. Ms. Baldwin responded, "we'll deal with that then." Id.

The events leading up to Plaintiff's termination started ten days later on Friday, April 29, 2005. Plaintiff was scheduled to work from 9:00 a.m. to 5:30 p.m. on that day. Pl.'s Dep. at 65. Around 4:15 p.m., Plaintiff decided to leave for the day. Id. She advised an assistant manager, Jody Graham, that she "hadn't been feeling well and that [she] was going to leave." Id. Plaintiff "clocked out" and left with a "bag of items" to drop off at the Dartmouth store. Id. at 66-67. Before Plaintiff reached her car, she received a call on her cell phone from Ms. Graham. Id. at 67. Ms. Graham informed Plaintiff that Ms. Baldwin just called the store looking for her. Id.

Plaintiff returned to the store but did not immediately return Ms. Baldwin's call. She "remembered" it was Friday and the banks would be closed the next day, and she "wanted to get some ones" for the weekend. Id. at 68. Plaintiff walked next door to the bank but didn't end up going in because it was too busy and she was feeling very nauseous. Id. at 69.

Plaintiff then returned Ms. Baldwin's call. Ms. Baldwin answered and said "Oh, your associate said you left for the day." Id. at 70. Rather than informing Ms. Baldwin that she had clocked out and was leaving, Plaintiff responded "I ran over to the bank." Id. After talking to Ms. Baldwin, Plaintiff "clocked back in" and worked the rest of the day. Id. at 71. She never returned to the bank, and did not assign anyone else to go to the bank. Id. at 71-72.

Ms. Baldwin, who lived in Newport at the time, stopped at the Newport store after Plaintiff's departure for the day on April 29, 2005. Baldwin Dep. at 74. Ms. Baldwin reviewed Plaintiff's

timecard and discussed Plaintiff's actions with Ms. Graham. Id. at 78. Ms. Baldwin then called her supervisor and reported that she believed Plaintiff had lied to her because Ms. Graham told her Plaintiff had left for the day, Plaintiff's timecard showed she had punched out, and Plaintiff told Ms. Baldwin she "ran" to the bank. Id. at 86.

Ms. Baldwin met with Plaintiff on May 4, 2005. Ms. Baldwin asked Plaintiff "why would your associate tell me you left and you told me you just ran to the bank?" Pl.'s Dep. at 78. Rather than directly explaining what happened, Plaintiff responded "I don't know. I had ran to the bank." Id. Ms. Baldwin then asked Plaintiff why she clocked out if she was just going to the bank. Id. Only then did Plaintiff reveal to Ms. Baldwin that her intention was to leave for the day. Id. at 79. At Ms. Baldwin's request, Plaintiff provided a written statement in which she indicated that it was only after "more questions" from Ms. Baldwin that she "hesitantly let her know my true intention was to leave for the day." Def.'s Appendix at 57. Plaintiff "apologized for not being direct." Id. Plaintiff also conceded that she had untruthfully told Ms. Baldwin that she had informed Ms. Graham that she would be at the bank. Id. at 58. Plaintiff's employment as Store Manager was terminated the next day for dishonesty. Pl.'s Dep. at 93.

**Summary Judgment Standard**

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S. Ct. 2505, 2514-2515, 91 L. Ed. 2d 202, (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

## Analysis

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer...to discharge any individual, or otherwise to discriminate against any individual with respect to his...employment, because of such individual's sex...." 42 U.S.C. § 2000e-2(a)(1).[1] In 1978, Congress enacted the Pregnancy Discrimination Act to expand Title VII's definition of "because of sex" to include pregnancy. 42 U.S.C. § 2000e(k). Thus, a violation of Title VII occurs whenever pregnancy is a motivating factor for an adverse employment action. See Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 722 (7th Cir. 1998); and Figueroa Telemaco v. Mobile Paints Mfg. Co., 421 F. Supp. 2d 440, 445 (D.P.R. 2006). In this case, Plaintiff does not rely on direct evidence of discrimination or a so-called "smoking gun." Thus, Plaintiff's proof of a Title VII violation is evaluated pursuant to the familiar three-step, burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). The First Circuit has thoroughly outlined this framework as follows:

> [STEP ONE] [T]he plaintiff shoulders the initial burden of adducing a prima facie case of unlawful discrimination. This includes a showing that: (1) plaintiff is a member of a protected class; (2) plaintiff's employer took an adverse employment action against him; (3) plaintiff was qualified for the employment he held; and (4) plaintiff's position remained open or was filled by a person whose qualifications were similar to his. Establishment of a prima facie case creates a presumption of unlawful discrimination.

---

[1] The same analysis applies to all three discrimination counts contained in Plaintiff's Complaint. See Kriegel v. State of R.I., 266 F. Supp. 2d 288, 296 (D.R.I. 2003) (applying federal analysis to claims under FEPA and RICRA); and Russell v. Enter. Rent-A-Car Co., 160 F. Supp. 2d 239, 265 (D.R.I. 2001) ("FEPA is Rhode Island's analog to Title VII and the Rhode Island Supreme Court has applied the analytical framework of federal Title VII cases to those brought under FEPA.") (citations omitted). Therefore, this Court will generally refer to Title VII in its analysis, but the analysis will also apply to Plaintiff's claims under FEPA and RICRA.

> [STEP TWO] Once a plaintiff establishes a prima facie case, the burden [of production, not persuasion,] shifts to the employer to rebut this presumption by articulating a legitimate, non-discriminatory reason for its adverse employment action.
>
> [STEP THREE] In the third and final stage, the burden devolves upon the plaintiff to prove that the reasons advanced by the defendant-employer constitute mere pretext for unlawful discrimination. To meet this burden, the plaintiff must prove not only that the reason articulated by the employer was a sham, but also that its true reason was plaintiff's [pregnancy]....

Smith v. F.W. Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996) (citations and footnote omitted).

For purposes of deciding this Motion, the Court presumes that Plaintiff has proffered sufficient evidence to avert summary judgment on her prima facie case of pregnancy discrimination. The Court further finds, based on the evidence discussed below in connection with pretext, that Defendant has met its limited burden of articulating a legitimate, non-discriminatory reason for terminating Plaintiff's employment, i.e., her dishonesty. Thus, the issue before the Court is whether Plaintiff has adduced sufficient evidence to support a rational finding that Defendant's articulated reason for the termination of her employment was a pretext and that its real reason for terminating her employment was her pregnancy. See Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 15 (1st Cir. 1998). "Put another way, [Plaintiff] cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of intentional...discrimination on the part of [Defendant]." Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19-20 (1st Cir. 1999). Plaintiff has not done so.

"[A]t the summary judgment stage, Plaintiff 'must produce evidence to create a genuine issue of fact with respect to two points: whether the employer's articulated reason for its adverse action was a pretext and whether the real reason' was [pregnancy] discrimination." Ashley v. Paramount

Hotel Group, Inc., 451 F. Supp. 2d 319, 333 (D.R.I. 2006) (quoting Quinones v. Buick, 436 F.2d 284, 290 (1st Cir. 2006)). Plaintiff has failed to do so as she "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz, 896 F.2d at 8.

Plaintiff failed to present any direct evidence of discrimination. "Direct evidence of discriminatory intent in pregnancy discrimination cases generally is in the form of an admission by a supervisor or decision maker that the employee was [disciplined] because she was pregnant." Kennedy, 140 F.3d at 723. Plaintiff also failed to present any evidence of disparate treatment of other pregnant employees. See Visco v. Cmty. Health Plan, 957 F. Supp. 381, 388 (N.D.N.Y. 1997) ("[T]he most probative means of proving pretextual discharge is to demonstrate that similarly situated [nonpregnant] employees were treated differently."). Such evidence has been characterized as "especially relevant" to the issue of pretext. Ashley, 451 F. Supp. 2d at 333. Plaintiff also failed to identify any negative comments regarding her pregnancy made by any of Defendant's employees (whether decision makers or not). See Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 35 (1st Cir. 2001) ("The...burden of persuasion on pretext may be met...by showing that discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker.").

Plaintiff's theory is that her dishonesty was "just an excuse to terminate [her] because she was going to be out of work due to the birth of her child around Christmas, which is the busiest season of the year for [Defendant]." Document No. 34 at 10. She relies exclusively on four pieces of circumstantial evidence in her attempt to establish a trialworthy issue of discrimination.[2] First,

[2] There are three generally recognized types of circumstantial evidence of intentional discrimination: (1) comparative evidence; (2) pretext evidence; and (3) a mosaic of evidence which, taken together, would permit an inference of discriminatory intent. Kennedy, 140 F.3d at 724-725. Plaintiff attempts to use the mosaic approach.

Plaintiff points to timing. In her words, the "close temporal proximity," i.e., twelve days, between when she disclosed her pregnancy and when she was fired. Second, Plaintiff contends that Ms. Baldwin "seemed put off by her being pregnant" and was not as friendly. Third, Plaintiff posits that Defendant's investigation did not include an inquiry as to the reason for her dishonesty. Finally, Plaintiff contends that termination was "too severe" a punishment given the absence of any prior instances of dishonesty and because prior performance issues resulted in progressive discipline. As detailed below, these pieces of circumstantial evidence, either singly or in combination, are not sufficient to support a reasonable inference of pregnancy discrimination even when viewed in the light most favorable to Plaintiff and with all reasonable inferences drawn in her favor. Thus, summary judgment should enter for Defendant.

As to timing, Plaintiff is correct that the decision to terminate came shortly after she disclosed her pregnancy. However, Plaintiff neglects to appreciate that the decision came even closer in time to her untruthfulness. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (an intervening act of misconduct erodes any causal connection suggested by the temporal proximity between protected conduct and termination). In counsel's zealous efforts to defend Plaintiff's statements, he characterized her statements as either a failure to be fully forthcoming or as technically true, however, there is no dispute based on the record before the Court that Plaintiff was intentionally dishonest with her supervisor.[3]

Plaintiff was employed as a retail store manager. At the hearing, her counsel agreed that this was a position of trust entailing supervisory responsibility for store inventory, cash receipts, payroll

---

[3] Even if there was an issue of fact as to Plaintiff's dishonesty, the First Circuit has identified the "principal focus" as whether the responsible decisonmakers "reasonably believed that [Plaintiff] lied, rather than whether she actually lied." Straughn, 250 F.3d at 41. Plaintiff has, however, failed to even identify evidence supporting a genuine issue of material fact as to Ms. Baldwin's reasonable belief that Plaintiff lied to her.

integrity, etc. The record supports that Plaintiff misled her supervisor at least three times and thus breached that trust. On April 29, 2005, even though Ms. Baldwin informed Plaintiff that she was told Plaintiff left for the day, Plaintiff responded by only disclosing that she "ran over to the bank." On May 4, 2005, Plaintiff reiterated this inaccuracy and only revealed the truth when confronted with her timecard. Finally, Plaintiff untruthfully told Ms. Baldwin that she had informed her Assistant Manager that she was going to the bank. It is undisputed that Plaintiff intended to mislead her supervisor about her April 29, 2005 departure time.

As to Ms. Baldwin's demeanor, Plaintiff has offered no objective evidence to support her claim that Ms. Baldwin "seemed put off by her being pregnant." Plaintiff has not identified any negative comments made by Ms. Baldwin about her pregnancy, potential work restrictions or maternity leave. She relies on vague allegations regarding Ms. Baldwin's tone and mannerisms but points to nothing specific. <u>See</u> <u>Minor v. Ivy Tech State Coll.</u>, 174 F.3d 855, 858 (7th Cir. 1999) (In sex harassment context, Court recognizes pitfalls of permitting a Title VII case to proceed to a jury on basis of "nebulous impressions concerning tone of voice, body language, and other nonverbal, nontouching modes of signaling."); and <u>Hawthorne v. Sears Termite & Pest Control, Inc.</u>, 309 F. Supp. 2d 1318, 1335 (M.D. Ala. 2003) (inference of discrimination cannot properly be drawn from "conclusory assertions" regarding tone of voice). Plaintiff also contends that Ms. Baldwin "did not visit her store after the pregnancy announcement and her phone calls to the store also decreased." Document No. 34 at 13. In addition to lacking specifics, the representative period is only ten days. Further, if Ms. Baldwin was searching for an "excuse" to fire Plaintiff as alleged, it would make sense if Ms. Baldwin increased, not decreased, her contact with Plaintiff in order to discover such an excuse.

As to the investigation, Plaintiff primarily argues that Defendant failed to consider the reason for her dishonesty. Plaintiff alleges she had a "valid reason" for not being as "forthright" as she should have been because she was "uncomfortable telling Baldwin that she left early because of morning sickness." Document No. 34 at 14. Again, Plaintiff does not point to any objective evidence that would support her impression that Ms. Baldwin felt negatively about her pregnancy and thus Plaintiff had no choice but to lie about her intent to leave work one hour and fifteen minutes early due to sickness. Plaintiff chose to disclose her pregnancy to Ms. Baldwin, and Plaintiff chose to be dishonest with Ms. Baldwin. Plaintiff held a position of trust as a salaried Store Manager, and Plaintiff has pointed to no evidence that Defendant has given, or would give, non-pregnant Store Managers a second chance under such circumstances.

Finally, Plaintiff contends that termination was too severe a punishment since her dishonesty resulted in no monetary loss to Defendant and this was the first time she was "accused of not being completely honest." Document No. 34 at 15. Plaintiff contends that she would have been "given the benefit of the doubt" if she was not pregnant. Id. However, she identifies absolutely no evidence supporting this assertion and thus, it is "unsupported speculation." See Fed. R. Civ. P. 56(e)(2). In the absence of probative evidence of discriminatory intent, it is simply not the prerogative of this Court, or a jury, to sit in judgment of whether Plaintiff's dishonesty warranted a level of discipline short of termination. See Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991) ("Courts may not sit as super personnel departments, assessing the merits – or even rationality – of employers' nondiscriminatory business decisions.").

**Conclusion**

For the reasons stated, I recommend that the District Court GRANT Defendant's Motion for Summary Judgment (Document No. 28) as to all claims in Plaintiff's Complaint and enter Final Judgment in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1990).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
April 28, 2008