UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CRYSTAL VASCONCELLOS | : | |
| | : | |
| v. | : | |
| | : | C.A. No.: 06-4016T |
| | : | |
| PIER 1 IMPORTS (US) INC., and | : | |
| CINDY BALDWIN, Individually and in her capacity | : | |
| and as an employee and Regional Manager of | : | |
| Pier 1 Imports (US) Inc. | : | |

MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF MAGISTRATE ALMOND'S RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now comes the Plaintiff in the above-entitled matter, and hereby requests this Honorable Court to reconsider Magistrate Almond's recommendation (hereinafter referred to as "Recommendation") to grant Defendants' Motion for Summary Judgment. Plaintiff respectfully states that when Magistrate Almond recommended the granting of Defendants' Motion for Summary Judgment, he made errors on: the facts; the law; and the standard of review. Plaintiff will use this memorandum only for the purpose of addressing the specific errors in Magistrate Almond's recommendation and shall use Plaintiff's prior memorandum in support of her objection to summary judgment for reference.

## I. ERRORS OF FACTS

On page nine (9) of Recommendation, it is written that "there is no dispute based on the record before the Court that Plaintiff was intentionally dishonest with her supervisor." However, in Plaintiff's response to Defendants' Undisputed Facts, number

64, she states in response to number 64: “I said I'm sorry if she felt that I was dishonest with her. It wasn't my intention to be dishonest with her.” Clearly, Plaintiff was not apologizing for her actions but rather because she believed that Ms. Baldwin thought Plaintiff was being deceptive, which was not her intention. See deposition of Crystal Vasconcellos, p. 86, l. 11-13; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. Plaintiff also states in her response to Defendants' Undisputed Facts, number 69: "Plaintiff never intended to mislead Defendant. See deposition of Crystal Vasconcellos, p. 81, l. 21-25; p. 85, l. 21-24; 86, l. 9-13 attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. In fact, the next line of Plaintiff’s statement was: “I also explained that I felt extremely uncomfortable in this situation believing that there would be no le-way or sympathy or accommodation to the pregnancy.”" This will be discussed further in the next section in that the Recommendation used certain facts and made inferences in the moving party’s' favor.

On page ten (10) of Recommendation, it is written that "it is undisputed that Plaintiff intended to mislead her supervisor about her April 29, 2005 departure time." Based on the evidence as described earlier discussing page nine (9), this statement is also untrue. The Recommendation can not point to any facts that supports this inference. This also will be discussed further in the next section in that the Recommendation used certain facts and made inferences in the moving party’s' favor.

## II. ERRORS OF STANDARD OF REVIEW

When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable

inference in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997). From the beginning of the Recommendation to the end, the evidence was reviewed in a more favorable light for the moving party rather than for the nonmoving party. In addition, the moving party was given the benefit of doubt for each and every inference by this Honorable Court. This caused the Recommendation to be incorrect.

This incorrect standard started in the facts section on page three (3) of Recommendation, when it was written: "rather than informing Ms. Baldwin that she had clocked out and was leaving, Plaintiff responded "I ran over to the bank."" Plaintiff never stated on page 70 of her deposition that "rather than informing Ms. Baldwin that she had clocked out and was leaving." It was a fact that Plaintiff did not inform Ms. Baldwin that she clocked out and left, however, by adding the language "rather than informing", the Recommendation made an inference that Plaintiff was the party at fault. The evidence that she stated this due to her concerns about her pregnancy was not considered.

The next instance of the Recommendation using an incorrect standard, occurred in the facts section on page four (4) of the Recommendation. Again the Recommendation stated "rather than directly explaining what happened . . . ", by adding the language "rather than directly explaining", the Recommendation is adding language to the facts as agreed to by both parties that made an inference that Plaintiff was the party at fault. It could be argued that Plaintiff should have been direct with her explanation, however, it could also be argued that Plaintiff explained her whereabouts due to the concerns she had about Defendants' reaction to her pregnancy. See deposition of Crystal Vasconcellos, p. 95-96, l. 8-25. 1-11; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment.

The last instance of the Recommendation using an incorrect standard in the facts section occurred later in the same paragraph of page four (4) of the Recommendation when it was written that "Plaintiff also conceded that she had untruthfully told Ms. Baldwin that she had informed Ms. Graham that she would at the bank. Id. at 58". Plaintiff stated that she "mistakenly" told this to Ms. Baldwin. See deposition of Crystal Vasconcellos, p. 92, l. 2-23; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. The Recommendation, as written, again makes the inference that Plaintiff was intentionally untruthful. This is a fact that a jury should decide.

The Recommendation also used an incorrect standard in the Analysis Section. As discussed previously in the Errors of Fact section of this memorandum, page nine (9) of the Recommendation stated that "there is no dispute based on the record before the Court that Plaintiff was intentionally dishonest with her supervisor." However, viewing the evidence in the light most favorable to the Plaintiff, Plaintiff stated she never intended to mislead Defendant. See deposition of Crystal Vasconcellos, p. 81, l. 21-25; p. 85, l. 21-24; 86, l. 9-13; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. The Recommendation clearly was incorrect in stating that the record shows Plaintiff was intentionally dishonest. The Recommendation also refers to a footnote (number 3) when discussing this point. This will be discussed further in the next section as to how the Recommendation viewed Ms. Baldwin's reasonable belief that Plaintiff had lied to her.

The next instance of the Recommendation using an incorrect standard in the Analysis Section occurred on page ten (10) of Recommendation when it was written that

"it is undisputed that Plaintiff intended to mislead her supervisor about her April 29, 2005 departure time." The Recommendation did not point to any facts in support of this inference and disregarded evidence where Plaintiff testified that she never intended, intentionally or otherwise, to mislead Defendants. See deposition of Crystal Vasconcellos, p. 81, l. 21-25; p. 85, l. 21-24; 86, l. 9-13; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment.

The Recommendation using an incorrect standard in the Analysis Section occurred further down on page ten (10) of the Recommendation when it was written that "Plaintiff has offered no objective evidence to support her claim that Ms. Baldwin "seemed put off by her being pregnant."" Viewed in the light most favorable to Plaintiff and drawing all inferences in her favor, Plaintiff testified as to reasons why Ms. Baldwin treated her differently after she disclosed her pregnancy. At her employment review on April 19, 2005, Ms. Baldwin asked very personal questions that are impropriate for an employer-employee performance review, her demeanor was hesitant and unsure as if it were a bad thing, looked at Plaintiff like she was inferior and stupid, and Plaintiff felt extremely uncomfortable and that she needed to justify herself and her pregnancy to her. See Interrogatory Answer number 11 of Crystal Vasconcellos; attached hereto as *Exhibit A*[1]. In addition, before Baldwin was informed of the pregnancy, she and Plaintiff had a very good working relationship. Baldwin was personable, very friendly, always smiling, always conversational, and seemed very open towards Plaintiff. See deposition of Crystal Vasconcellos, p. 29, l. 5-25; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. Baldwin would

call the store everyday and in that she lived only a few streets over from the store would usually drop by the store 1-2 times a week. See deposition of Crystal Vasconcellos, p. 30, l. 1-25; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. After Plaintiff informed Baldwin that she was pregnant, their interaction changed. Plaintiff was uncomfortable speaking to Baldwin about the pregnancy. When she told Baldwin, Baldwin seemed put off by her being pregnant. Her mannerisms changed, she was not as cherry, and the tone of her voice changed. See deposition of Crystal Vasconcellos, p. 95-96, l. 14-25, 1-9; p. 147-148, l. 16-25, 1-21; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. In addition, she did not visit the store after the pregnancy announcement and her phone calls to the store also decreased. See deposition of Crystal Vasconcellos, p. 30, l. 17-22; p. 147-148, l. 16-25, 1-21; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment.

The Recommendation states at the end of page ten (10) that "if Plaintiff was searching for an "excuse" to fire Plaintiff as alleged, it would make sense if Ms. Baldwin increased, not decreased, her contact with Plaintiff in order to discover such an excuse." The Recommendation determined its own conclusion based on previous facts stated. This evidence clearly was not viewed in the light most favorable to Plaintiff and makes an unfavorable inference against Plaintiff.

The last instance of the Recommendation using an incorrect standard in the Analysis Section occurred on page eleven (11) of the Recommendation when it was written that "Plaintiff had no choice but to lie about her intent to leave work one hour and

---

[1] This Exhibit was not included in the brief submitted to Magistrate Almond.

fifteen minutes early due to sickness" and "Plaintiff chose to be dishonest with Ms. Baldwin." These are disputed facts that the Recommendation has ruled in Defendants' favor. First, as discussed earlier, viewing the evidence in the most favorable light of Plaintiff and drawing all inferences in her favor, Plaintiff did not lie. In addition, the reason for Plaintiff leaving work early was not only due to sickness, but she was only delivering merchandise to another store in another state which would have been on company time. See deposition of Crystal Vasconcellos, p. 66-67, l. 18-25, 1-8; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. Second, as stated throughout this memorandum, Plaintiff did not "chose to be dishonest".

**III. ERRORS OF LAW**

Summary Judgment is only appropriate when the pleadings and other submissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party opposing a motion for summary judgment must establish the existence of a genuine issue for trial by setting forth specific facts which, if established at trial as true, would entitle him to prevail on his claim. He may not rely on mere allegations to defeat such motion. *Floyd v. Farrell,* 765 F.2d 1, 5 (1st Cir. 1985). "To demonstrate that no genuine issue of material fact exists, the moving party must point out 'an absence of evidence supporting the nonmoving party's case.'" *Daury v. Smith*, 842 F.2d 9, 11 (1st Cir. 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)). This Honorable Court should not grant Defendants' Motion for Summary Judgment as

recommended by Magistrate Almond in that Magistrate Almond is mistaken when he decided there are no material facts in dispute. Each part of Magistrate Almond's analysis shall be discussed below. In that the Recommendation states that Plaintiff has proffered sufficient evidence to avert summary judgment on her prima facie case, Plaintiff will not address this further.

The Recommendation states that Plaintiff has failed to establish evidence of pretext by Defendants. The Recommendation is correct in that Plaintiff has "failed to present any direct evidence of discrimination" or what is usually called the "smoking gun" variety. For example, the Recommendation refers to Plaintiff not presenting "any evidence of disparate treatment of other pregnant employees", citing a case from New York. However the First Circuit has addressed this issue and has ruled that "in a disparate treatment case, the issue is less whether a pattern of discrimination existed and more how a particular individual was treated, and why." Cumpaian v. Banco Santander Puerto Rico, 902 F.2d. 148 (1st Cir. 1990). More importantly, direct evidence is not required to establish evidence of pretext. Resare v. Raytheon Co., 981 F.2d 32, 42 (1st Cir. 1992). In Title VII cases, direct or circumstantial evidence can be used by Plaintiff to prove her case. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714, n. 3, 103 S.Ct. 1478, 75 L.Ed 2d 403 (1983). In fact, "circumstantial evidence . . . may also be more certain, satisfying and persuasive than direct evidence." Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 508, n. 17, 77 St. 443, 1 L.Ed. 2d 493 (1957).

Plaintiff has provided numerous examples of circumstantial evidence to establish evidence of pretext by Defendants. The first is the close temporal proximity between when the Plaintiff informed Defendant that she was pregnant and the date when

Defendant terminated Plaintiff. The Recommendation refuted this issue by stating that the "decision (to terminate) came even closer in time to her untruthfulness. The Recommendation cited Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) in support of this. However, Kiel, a decision from the Eighth Circuit, was a case in which the only evidence of discrimination the Plaintiff had was a close temporal proximity. In this matter, temporal proximity is just one of many ways in which the Plaintiff can demonstrate discrimination by the Defendants.

The First Circuit has ruled that one way of giving rise to an inference of casual connection is by showing a close temporal proximity between when the Plaintiff informed Defendant that she was pregnant and the date when Defendant terminated Plaintiff. See Hodgens v. General Dynamics Corporation, 144 F.3d 151, 168 (1st Cir. 1998) and Oliver v. Digital Equip. Corp., 846 F.2d 103, 110 (1st Cir. 1988). In addition, as stated in the Errors of Standard of Review section, the Recommendation made an improper inference that Plaintiff was untruthful, even going as far to state that "there is no dispute based on the record before the Court that Plaintiff was intentionally dishonest with her supervisor", which was incorrect. The Recommendation, in footnote 3, also decided as fact what the state of mind of Ms. Baldwin was as to whether she believed Plaintiff lied to her. This improperly determined a material fact in the light most favorable to the moving party.

If all Plaintiff had as evidence to establish pretext was close temporal proximity, then the Recommendation would be correct in following Kiel. However, there are other "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could

rationally find them worthy of credence and [with or without additional evidence and inferences properly drawn therefrom] infer that the employer did not act for the asserted non-discriminatory reasons." Hodgens at 168 citing Hilti, Inc., 108 F.3d at 1323 (internal quotation marks omitted).

One such situation that demonstrated "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions", which the Recommendation did not address, was the sequence of events that led up to Plaintiff' termination. Reno v. Bossier Parish Sch. Bd., 520 U.S. 471 (1997). First, there was a change in the way Defendant viewed Plaintiff's work performance from before Defendant was informed of Plaintiff's pregnancy to after said date. Up to the date of Plaintiff's performance review on April 19, 2005, Plaintiff was working at a performance level that met the standards set by Pier 1. At said review, Plaintiff received an overall score of "good". See Performance Review; attached as *Exhibit E* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. She did have two (2) areas that needed improvement; however, it must not have been of any concern to Defendant in that Plaintiff received a raise and a good evaluation. In addition, at the time of said review, Plaintiff had received no other documented warnings since Baldwin became Plaintiff's supervisor other than the warning for the audit that occurred in February of 2005. See deposition of Cynthia Baldwin, p. 59, l. 11-14; attached as *Exhibit B* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. The warning received for said audit was not even warranted. Plaintiff spoke with her employer and explained that most of what was contained in said audit was inaccurate. See deposition of Crystal Vasconcellos, p. 155-157, l. 18-25, 1-25, 1-13;

attached as _Exhibit A_ of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. No further mention or corrective action was taken due to said written corrective action, including no reference to it in the April 19, 2005 performance review. However, once Defendant was informed of Plaintiff's pregnancy not only was the audit a big issue with Defendant but Defendant also then raised another alleged poor work performance that had occurred before Plaintiff told Defendant she was pregnant. This was an incident that occurred in March of 2005 during a divisional meeting walk through of Plaintiff's store in Newport. Defendant is now alleging how poor Plaintiff performed and how disappointed it was with her. However, at no point before Plaintiff gave notice of her pregnancy was she given any type of corrective action or warning. In fact, Baldwin testified that she did not even provide any type of feedback to Plaintiff after the March, 2005 incident. Further, there was no mention of this situation in any part of Plaintiff's performance review. See deposition of Cynthia Baldwin, p. 56-7, l. 5-25, 1-14; attached as _Exhibit B_ of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. See deposition of Susan Dubois, p. 17-9, l. 20-25, 1-25, 1-15; attached as _Exhibit C_ of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. It was not until after Defendant was informed of said pregnancy that Defendant attempted to make this an issue.

Another such situation that demonstrated "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" was the demeanor of Ms. Baldwin. The Recommendation stated that "Plaintiff offered no objective evidence to support her claim . . ." However, in viewing the evidence in the most favorable light of Plaintiff and

drawing all inferences in her favor, and as stated previously, Plaintiff testified as to reasons how Ms. Baldwin treated her differently after she disclosed her pregnancy. The Recommendation cites numerous cases in its support. The first was Minor v. Ivy Tech State Coll, 174 F.3d 855 (7th Cir. 1999) which the Recommendation used to show that vague allegations regarding tone and mannerisms is not enough. However, Minor stated that the context in which the tone and mannerisms is crucial. Plaintiff points to not only specific examples from Ms. Baldwin, but when taken in the context of her pregnancy, it shows a negative attitude towards Plaintiff. For example, at her April 19, 2005 employment review, Plaintiff stated that Ms. Baldwin asked impropriate questions and looked at Plaintiff like she was inferior and stupid. So much so that Plaintiff felt extremely uncomfortable and that she needed to justify herself and her pregnancy to her. See Interrogatory Answer number 11 of Crystal Vasconcellos; attached hereto as *Exhibit A*. In addition, before Baldwin was informed of the pregnancy, she and Plaintiff had a very good working relationship. Baldwin was personable, very friendly, always smiling, always conversational, and seemed very open towards Plaintiff. See deposition of Crystal Vasconcellos, p. 29, l. 5-25; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. After Plaintiff informed Baldwin that she was pregnant, their interaction changed. Ms. Baldwin's mannerisms changed, she was not as cherry, and the tone of her voice changed. See deposition of Crystal Vasconcellos, p. 95-96, l. 14-25, 1-9; p. 147-148, l. 16-25, 1-21; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. This is more than just a "sexy voice" as was the case in Minor. As for the Hawthorne case cited in the Recommendation, that case

dealt with allowing improper affidavits which contain "conclusory assertions" from an affiant who does not have personal knowledge or an adequate basis for their testimony. This is not the case with Plaintiff.

The Recommendation also discussed the decrease in communication between Plaintiff and Ms. Baldwin. The Recommendation did not view in the light in the most favorable to Plaintiff and drawing all inferences in her favor that before the announcement of Plaintiff being pregnant Baldwin would call the store everyday and in that she lived only a few streets over from the store, would usually drop by the store 1-2 times a week (see deposition of Crystal Vasconcellos, p. 30, l. 1-25; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment) and after said announcement, Ms. Baldwin did not once visit the store and her phone calls to the store also decreased (see deposition of Crystal Vasconcellos, p. 30, l. 17-22; p. 147-148, l. 16-25, 1-21; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment). In fact, the Recommendation drew not just inferences but conclusions that Ms. Baldwin would have been at the store more often "in order to discover such an excuse." At the summary judgment stage, this is not the role of the Court.

The next situation where there are other "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder cold rationally find them unworthy of credence and [with or without additional evidence and inferences properly drawn therefrom] infer that the employer did not act for the asserted non-discriminatory reasons" (Hodgens at 169 citing Hilti, Inc., 108 F.3d at 1323 (internal quotation marks

omitted)) is the manner of the investigation. The Recommendation addressed this issue, but not in the context of it being another situation where Defendants' proffered reason for its legitimate business decision to terminate Plaintiff was unworthy of credence. Burdine, 450 U.S. at 256, 101 S. Ct. at 1095, 67 L. Ed. 2d at 217. Baldwin, the person who acted differently when she was informed about Plaintiff's pregnancy, controlled the investigation. She decided what information was to be sent to the other people involved in the decision to terminate Plaintiff and questioned employees in such a manner as to obtain the information she wanted to obtain. Further, she was the only person who spoke with any of the witnesses. See deposition of Cynthia Baldwin, p. 114, l. 10-13; attached as *Exhibit B* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. She did not obtain a statement from Jody Graham until after the decision to terminate Plaintiff was made. She did not speak with Plaintiff until 5 days after the incident occurred. She did not send an email to others regarding any of the facts she was personally told until after she received Plaintiff's statement. She had decided that Crystal was dishonest from the outset of her investigation, even before she had spoken to Plaintiff. See deposition of Susan Dubois, p. 42, l. 8-11; attached as *Exhibit C* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment.

The Recommendation did state that Plaintiff "chose to be dishonest with Ms. Baldwin". However, she had a valid reason for doing so that the Recommendation never addressed. She clearly stated that she was not as forthright as she should have been because she was uncomfortable telling Baldwin that she left early because of morning sickness. If Defendants did have concern regarding Plaintiff being pregnant and afraid to

tell Ms. Baldwin the true reason for leaving the store early, than a reasonable inference could be made that at least one person at Pier 1 would care or take into consideration her reasons for telling Baldwin what she did. Not one employee ever questioned Plaintiff as to why she felt uncomfortable speaking to Baldwin about her condition due to her pregnancy. See deposition of Susan Dubois, p. 44-45, l. 16-25, 1-22; p. 52-53, l. 10-25, 1-21; attached as *Exhibit C* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. All Defendant was concerned with was the outcome and not the reasons. This was because Defendant had their chance to terminate a pregnant manager. The details as to why Plaintiff believed she had to protect her self would have just gotten in the way.

In addition, Plaintiff stated that she mistakenly told Baldwin that she told Jody Graham she was going to the bank when she did not. See deposition of Crystal Vasconcellos, p. 92, l. 2-23; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. This information was never passed on by Baldwin. See Email sent by Ms. Baldwin; attached hereto as Exhibit B[2]. Plaintiff told Baldwin that she was sorry if Baldwin felt she was being dishonest. See deposition of Crystal Vasconcellos, p. 86, l. 11-13; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. This information was never passed on by Baldwin. See Email sent by Ms. Baldwin; attached hereto as Exhibit B. Plaintiff stated that she was leaving early but that she had to deliver merchandise to another store which would have taken most of the time she left early. See deposition of Crystal Vasconcellos, p. 66, l. 18-21; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for

Summary Judgment. This information was never passed on by Baldwin. See Email sent by Ms. Baldwin; attached hereto as Exhibit B.

Further, even if Plaintiff was not being completely honest in her statement, termination of her employment was too severe in this case. There was no monetary loss to Defendant. Store managers were given unlimited sick time. This was also the first instance in which Plaintiff was ever accused of not being completely honest. In fact, Defendant never reviewed her work history to see if this situation ever had arisen. Finally, Plaintiff had worked for Pier 1 for approximately 4 years. She was never an unsatisfactory employee. She should have been given the benefit of the doubt. If she was not pregnant, she would have been.

The last situation where there are other "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions", which the Recommendation never addressed, was the Pier One employee's version of what they were told regarding Plaintiff's pregnancy. Plaintiff testified that she told Ms. Baldwin that her due date was December 17, 2005. See deposition of Crystal Vasconcellos, p. 61, l. 11-23; attached as *Exhibit A* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. This is the exact opposite of what Baldwin testified had happened. Baldwin testified she never asked or told when Plaintiff's was due and in fact, had no concerns as to when Plaintiff would be out of work due to her giving birth. See deposition of Cynthia Baldwin, p. 66-7, l. 17-25, 1-19; attached as *Exhibit B* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. Shortly thereafter, Baldwin spoke with her supervisor, Susan Dubois and told her that Plaintiff was pregnant. Dubois stated that she needed to know about an

---

[2] This Exhibit was not included in the brief submitted to Magistrate Almond.

employee's pregnancy because she would need that type of information for scheduling purposes. See deposition of Susan Dubois, p. 29, l. 1-16; attached as *Exhibit C* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. At this point, one would expect that Defendant would need to know or have asked when Plaintiff was due so that proper scheduling and procedures could be put into place. However, Dubois also did not ask or was she told when Plaintiff was due. Plaintiff was a manager of an entire store, has announced she is pregnant, and no one knows or cares to ascertain whether she is newly pregnant or could go into labor in days. Dubois even stated that she did not know whether Plaintiff was due in 6 days or 6 months. See deposition of Susan Dubois, p. 29-30, l. 16-25, 1-22; attached as *Exhibit C* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment. Michele Trotter, who never spoke to Plaintiff, wrote in her notes that Plaintiff was early in her pregnancy. See deposition of Michelle Trotter, p. 76-77, l. 17-25, 1-9; attached as *Exhibit D* of Plaintiff's Memorandum in Support of her Objection to Defendants' Motion for Summary Judgment.

## III. CONCLUSION

When a plaintiff claims discrimination and is able to make out a prima facie case, the courts must be "particularly cautious" when granting an employer's motion for summary judgment when the motion is based on the employer's stated nondiscriminatory reason. Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 928 (1st Cir. 1983). When the nonmoving party is able to show pretext by indirect or direct evidence, the trial courts should use restraint in granting summary judgment where discriminatory animus is in issue. Id. It does not require independent evidence of discriminatory

animus. The court may infer discrimination from the prima facie portion along with compelling proof of the pretextual nature of the explanation provided by the defendant. Pierce v. Sears, Roebuck and Co, 2005 WL 226224 (D. Me 2005).

Therefore, for the reasons as stated above, the Plaintiffs respectfully request that this Honorable Court not approve Magistrate Almond's Recommendation and deny Defendants motion for summary judgment on all counts as it relates to Pier 1.

PLAINTIFF
By her Attorney,

/S/ Bruce P. Gladstein___
BRUCE P. GLADSTEIN, ESQ. (#5272)
750 EAST AVENUE
PAWTUCKET, RI 02860
(401) 722-9900 tel.
(401) 722-9919 fax

**CERTIFICATION**

I hereby certify that on the 12th day of May 2008, I mailed a true copy of the within, by regular mail, postage prepaid to Russell D. Cawyer, Esq., Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth TX 76102.

/s/ Bruce P. Gladstein Esq.
Bruce P. Gladstein Esq.