**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CRYSTAL VASCONCELLOS** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 06-00484-T-LDA** |
| **v.** | § | |
| | § | |
| **PIER 1 IMPORTS (U.S.), INC., AND** | § | |
| **CINDY BALDWIN** | § | |

**DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF MAGISTRATE ALMOND'S RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF**

COMES NOW, Defendant Pier 1 Imports (U.S.), Inc. and files its Objection to Plaintiff's Motion for Reconsideration of Magistrate Almond's Recommendation to Grant Defendants' Motion for Summary Judgment and Brief in Support Thereof and would respectfully show as follows:

## I. SUMMARY OF THE CASE.

This pregnancy discrimination case arises from the termination of Plaintiff's employment for dishonesty following an internal company investigation. Vasconcellos was employed as Pier 1's Store Manager at its retail store located in Newport, Rhode Island. (Clerk's Dkt. No. 29 ¶ 1). The store manager is the highest ranking Pier 1 employee at the store and is ultimately responsible for all of the day-to-day operations of the store. On April 29, 2005, Plaintiff left work before the end of her scheduled shift intending to go home for the day. (Clerk's Dkt. No. 29-1 ¶¶ 34, 36). Shortly thereafter, Plaintiff's Regional Manager, Cindy Baldwin ("Baldwin") called the store to speak with Plaintiff about the availability of certain merchandise at the store that might be used in the upcoming Seekonk sidewalk sale. (Clerk's Dkt. No. 29-1 ¶¶ 37, 49). Baldwin was told that Plaintiff had gone for the day. (Clerk's Dkt. No. 29-1 ¶¶ 37, 46). Another co-worker called Plaintiff on her cell phone to tell her that the Regional Manager called looking

for her. (Clerk's Dkt. No. 29-1 ¶ 38). Plaintiff returned to the store, obtained some cash from the safe, and then went to the bank to get change she claimed the store needed for the weekend. (Clerk's Dkt. No. 29-1 ¶¶ 40-43). Plaintiff did not enter the bank to get the change because she thought it was too busy and she was not feeling well. (Clerk's Dkt. No. 29-1 ¶ 43). Instead, Plaintiff returned to the store and returned Baldwin's call. (Clerk's Dkt. No. 29-1 ¶ 45).

When she contacted Baldwin, Baldwin said, "Your associate told me you had left for the day." (Clerk's Dkt. No. 29-1 ¶ 46). Vasconcellos responded that she had just gone to the bank. (Clerk's Dkt. No. 29-1 ¶ 47). Vasconcellos did not volunteer that she had indeed left the store for the day and only took the side trip to the bank after learning that her Regional Manager was looking for her. This was not the first time that Plaintiff was not at work in her store when her manager expected her to be. (Clerk's Dkt. No. 29-1 ¶ 54). Given the inconsistency in what Baldwin was initially told by the associate who said Vasconcellos had left for the day and Vasconcellos' statement that she had only gone to the bank, the Regional Manager investigated the circumstances surrounding Vasconcellos' departure. (Clerk's Dkt. No. 29-1 ¶¶ 55, 60-63). Following a thorough investigation that included the interview of Plaintiff, her co-worker having relevant knowledge about her leaving early, an opportunity for Plaintiff to submit a written statement and a review of timecards, Baldwin concluded that Plaintiff had not been honest with her whereabouts when Baldwin call and her intention to leave for the day on April 29, 2005. (Clerk's Dkt. No. 29-1 ¶¶ 60-73). Consequently, her employment was separated for dishonesty. (Clerk's Dkt. No. 29-1 ¶ 73). Plaintiff's pregnancy played no role in any adverse action affecting her.

The Magistrate Judge carefully analyzed the summary judgment evidence and presided over a lengthy oral argument regarding the Motion. The resulting Report and Recommendation correctly concluded that there was no genuine issue of material fact regarding Plaintiff's

pregnancy discrimination claims and recommended that Pier 1's Motion for Summary Judgment be granted. Pier 1 respectfully requests this Court adopt the Magistrate Judge's Report; grant its Motion for Summary Judgment and award it all other relief to which it may be justly entitled.

## II. <u>STANDARD OF REVIEW</u>

To qualify for "de novo" review of a U.S. Magistrate Judge's Report and Recommendation the party objecting to the Report must make specific written objections; identify the portion of the Report objected to; and the basis for each objection. 28 U.S.C. § 636; FED. R. CIV. P. 72; *Betancourt v. Ace Ins. Co. of Puerto Rico,* 313 F.Supp.2d 32 (D. P.R. 2004)( provide specific, direct objections to findings made by the magistrate failure to provide specific direct objections to the findings made by the magistrate precluded de novo review); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150 (1st Cir. 1994). Failure to comply with this rule precludes further review. *See Davet v. Maccorone,* 973 F.2d 22, 30-31 (1st Cir. 1992). Moreover, the District Court may accept any portion of the Report to which a party does not object and may properly limit its review solely to those items in the Report and Recommendation to which there was a specific objection. *Lacedra v. Donald W. Wyatt Detention Facility,* 334 F.Supp. 2d 114, 125-126 (D.R.I. 2004). In conducting its "de novo" review the district court may accept the Report in whole and is not required to "rehash" the Magistrate Judge's reasoning or issue a new opinion setting forth its own reasoning. *Jonco, LLC v. ALI, Inc.*, 157 F.3d 33, 35 (1st Cir. 1998); *Elmendorf Grafica, Inc. v. D.S. America (East), Inc.*, 48 F.3d 46, 50 (1st Cir. 1995).

## III. <u>PIER 1 OBJECTION TO PLAINTIFF'S POST-REPORT EVIDENCE</u>

As a preliminary matter, Pier 1 objects to two pieces of evidence that Plaintiff attempts to offer before this Court that was never previously offered before the Magistrate Judge. *See* Clerk's Dkt No. 44-2 at 5 and 45-1. Plaintiff seeks to offer her own interrogatory answers as

additional summary judgment evidence in opposition to the Report. *See* Clerk's Dkt No. 44-2 at 5 and Clerk's Dkt No. 45-1. Because these interrogatory answers were not made part of the summary judgment record before the Magistrate Judge and because they are not made under penalty of perjury or otherwise attested that they are made on personal knowledge and are true and correct, they are hearsay that should not be considered. *See Avila v. Valentin-Maldonado,* 2008 WL 747076 at *4 (D. P.R. 2008) ("Any testimony used in support of motion for summary judgment setting must be admissible in evidence, i.e., based on personal knowledge and otherwise not contravening evidentiary principles"); *Trans-Spec Truck Service, Inc. v. Caterpillar Inc*.,--- F.3d ----, 2008 WL 1886625 at *5 (1st Cir. 2008) (holding that district court did not abuse it discretion in refusing to consider additional evidence in reviewing magistrate judge's recommendation on dispositive motion never previously submitted to magistrate judge). Additionally, Plaintiff seeks to supplement the record with an e-mail from Baldwin recapping her conversations with Plaintiff. This e-mail was never before the Magistrate Judge and the Court should properly exclude it from consideration.

## IV. ARGUMENT AND AUTHORITIES

In responding to Plaintiff's complaints about the Report and because those complaints are not set forth in specific objections, Pier 1 has attempted to group those challenges by topics.

### A. The Magistrate Judge's Properly Concluded that Plaintiff Was Dishonest During the Investigation

The Magistrate Judge properly concluded, and the record supports, that Plaintiff was dishonest during the course of the company investigation.[1] Plaintiff focuses much of her complaints about the Report on the conclusions that Plaintiff was dishonest during the course of

[1] Plaintiff's counsel attempts to characterize Plaintiff's dishonesty a "mistake," "less than forthright," "apologetically failing to disclose," and "unintentional dishonesty". Regardless of the characterization, there is no question of material fact that Pier 1 believed Plaintiff had been dishonest.

the investigation. *See* Clerk's Dkt No. 44-2 at 1-2, 7, 9, 14-15. Plaintiff's complaints about these conclusions are unsupported by the summary judgment record evidence.

When Baldwin initially called the store looking for Plaintiff she was told that she was gone for the day. When Plaintiff returned the call a short time later, Baldwin said, "Your associate told me you had left for the day." (Clerk's Dkt. No. 29-1 ¶ 46). Vasconcellos responded that she had just gone to the bank. (Clerk's Dkt No. 29-1 ¶ 47). Vasconcellos did not volunteer that she had left the store for the day and only decided to go to the bank and return to the store after learning that Baldwin was looking for her. (Clerk's Dkt No. 29-1 ¶ 45).

On May 4, 2005, when Baldwin interviewed Plaintiff about her April 29 activities, Vasconcellos falsely told Baldwin that when she left the store she told her assistant manager that she was going to the bank. Not only were her statements false and inaccurate, Plaintiff conceded as much in writing and in her deposition. In her written statement Plaintiff provided during the course of the investigation, Plaintiff wrote:

> On Friday the 29th of April I wasn't feeling well and decided to leave a little early. Before I reached my car my assistant manager called my cell phone and informed me that Cindy would like me to call her back. I came back into the store grabbed some money to exchange for 1's at the bank. I ran over there, came back and returned Cindy's phone call. . . . <u>When she questioned me about where I was, I let her know I had went to the bank. I did not mention that my intent had been to leave the store.</u>
>
> * * *
>
> <u>I had told Cindy that I did let Jody, my assistant manager know I would be at the bank. I did not inform Jody I was leaving for the bank.</u> I said goodbye to her, and I was clocked out for the day.

(Clerk's Dkt No. 29-1 ¶ 57-59).

Plaintiff further admitted in her deposition that the statements she made to Baldwin during the investigation were false.

> Q: So during this May 4, 2005 interview, you did tell Ms. Baldwin that you told Jody you would be at the bank, correct?

A: Yes.

Q: But in actuality you had never told Jody that you had been at the bank, correct?

A: Correct?

Q: That was inaccurate, correct?

A: Yes.

* * *

Q: So you had, in fact, told Cindy that you had told your assistant manager that you had been at the bank right?

A: Correct.

Q: So that was inaccurate?

A: It was inaccurate.

* * *

Q: Do you think lying is an extreme misconduct?

A: It depends on the situation.

Q: What does it depend on? When is lying okay?
A: When the intention wasn't to lie, but somebody takes it as a lie.

Q: You mean like when you tell your manager that you told your assistant manager you were going to the bank, when, in fact, you didn't tell your assistant manger you were going to the bank?

A: It wasn't a specific yes or no. It wasn't a specific, direct question.

Q: But it was inaccurate nonetheless?

A: Sure.

(Clerk's Dkt No. 29-1 ¶ 61-71). Plaintiff attempts to show that there is a factual dispute about her whether she made dishonest statements during the course of the investigation by characterizing her false statements as "not as direct as she should have been". Only genuine factual disputes about material facts will warrant denial of a motion for summary judgment. A "genuine" dispute only exists where the evidence is such that a reasonable jury could return a

verdict in favor of Plaintiff on that issue. *See States Res. v. Architectural Team, Inc*. 433 F.3d 73, 80 (1st Cir. 2005). Here, based on Plaintiff's written statement and sworn deposition admissions, there can be no genuine dispute about whether Plaintiff's was honest with Baldwin during the course of the investigation. Consequently, the Magistrate Judge's conclusion that Plaintiff was dishonest during the course of the investigation was the only conclusion that could be reached from the summary judgment record.

Notwithstanding the overwhelming summary judgment evidence that Plaintiff was dishonest during the investigation, even if there were a genuine factual issues about Plaintiff's dishonesty, the Magistrate Judge properly concluded that there was no genuine issue of material fact about the decision maker's honest belief in the reasons articulated. The proper inquiry at the pretext stage of the burden-shifting analysis is on the perception of the decision maker and whether the employer honestly believed its stated reason for the decision. *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23 (1st Cir. 2001) ("[A]t this point in the burden-shifting analysis the principal focus must be upon whether . . . the responsible Delta decision makers, ***reasonably believed*** that Straughn lied, ***rather than whether she actually lied.***")(emphasis in the original).

The summary judgment record evidence establishes that following Baldwin's investigation where she interviewed all of the relevant witnesses and reviewed relevant documents (including Plaintiff's handwritten statement), the decision makers concluded that Plaintiff had been dishonest during the course of the investigation. (Clerk's Dkt No. 29-1 ¶ 72). There is no evidence that any of the decision makers did not honestly believe that Plaintiff was dishonest during the investigation. Indeed, even Plaintiff conceded in her deposition that she was unaware of any facts that led her to believe that Baldwin did not have a sincere belief that she had lied to her. (Clerk's Dkt No 29-1 ¶ 75 (App. 46: 17-24). The absence of any summary judgment evidence showing that Pier 1 did not honestly believe that Plaintiff was dishonest is

fatal to her pregnancy discrimination claim and the Motion for Summary Judgment should be granted.

**C. Complaints About The Investigation.**

Plaintiff complains about the manner in which Pier 1 conducted the investigation into Plaintiff's misconduct and asserts that the manner in which it was conducted that investigation demonstrates pretext. The manner in which a company conducts an internal investigation into misconduct is usually a business decision to which the Courts give deference. *See e.g., Grayson v. O'Neill*, 308 F.3d 808, 820 (7th Cir. 2002) (affirming summary judgment based on lack of pretext and rejecting plaintiff's self-serving quarrels with legitimacy of employer's investigation of plaintiff's misconduct); *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 678 (7th Cir. 1997) (rejecting plaintiff's argument that he could show pretext by establishing that the employer engaged in an impulsive, shoddy investigation); *Dunning v. Quander*, 468 F. Supp.2d 23, 32 n.10 (D.D.C. 2006) ("It is fairly clear that what plaintiff truly wants is for this Court to review the OPR investigation *de novo* and to declare that the charges against him were false. That is not a District Court's role.")

With respect to the investigation itself, Plaintiff's complaint that Baldwin waited five days after the misconduct to interview her (which included an intervening weekend) despite interviewing Graham the same day; Baldwin did not obtain an written statement from Graham until after the decision was made; only Baldwin actually interviewed the witnesses;[2] that Baldwin controlled the investigation; that Baldwin questioned employees in a manner so as to obtain the information she wanted to obtain. (Clerk's Dkt No. 44-2 at 14).

---

[2] Baldwin, as Plaintiff's direct supervisor, conducted the investigation. At the time the investigation commenced, Plaintiff had never made any complaints about Baldwin and there was no reason for her not to conduct the investigation. (Clerks Dkt. No. 29-1 ¶ 60).

None of the complaints about the investigation suggest that the investigation was not thorough or complete. To the extent Plaintiff complains that Baldwin did not pass along certain information to the other Pier 1 employees that participated in the decision making process is disingenuous. It is undisputed that Plaintiff provided her own written statement. She was free to write anything that she wanted in that statement to justify or explain her activities. It is undisputed that Plaintiff's written statement was forwarded to and shared with the other participants in the decision making process. Plaintiff's real complaint is with the conclusion of the investigation – not the investigation itself. (Clerk's Dkt No. 47 at 36:13-15).

That the investigation was adequate under the circumstances was effectively conceded in Plaintiff's deposition and the oral argument before the Magistrate Judge hearing the summary judgment motion. In her deposition the Plaintiff admitted that she could identify anything that Pier 1 should have done in its investigation of her misconduct that it did not do and could not identify any company policies Pier 1 failed to follow in the investigation. (Clerk's Dkt No. 29-1 ¶ 75-76). The manner in which the investigation was conducted does not show that Pier 1's stated reasons for terminating Plaintiff's employment were pretextual and that the real reason was unlawful pregnancy discrimination.

**B. Complaints About Plaintiff's Performance**

Plaintiff complains, pointing to the Performance Appraisal she received on April 19, 2005, that there was a marked change in the way her performance was viewed after she disclosed her pregnancy. (Clerk's Dkt No. 44-2 at 10-11) She notes the absence of any reference to the write-up she received on February 12, 2005 related to a retail audit of her store and the problems noted in her store that were observed in preparing the store for the Divisional Meeting in March 2005 in the Performance Appraisal she received on April 19, 2005 as evidence that she was performing well at the time her employment ended. (Clerk's Dkt No. 44-2 at 10-11). What

Plaintiff fails to appreciate is the fact that the Performance Appraisal only covered her performance from February 2004 to February 2005 (*i.e.*, February 1, 2004 through January 31, 2005). (Clerk's Dkt No. 29-3, p. 11 (App. 61); Clerk's Dkt No. 34-3, p. 2 [p. 19:1-8]).

The specific incidents of poor performance referenced by Plaintiff did not occur during the covered period and it is neither suspicious nor surprising that they were not included in a Performance Appraisal. The Performance Appraisal has no probative value regarding the quality of Plaintiff's performance in the three months following the review period. Additionally, since Plaintiff's employment was separated due to an act of dishonesty and not overall deficient performance, it is of no probative value whatsoever.

**C. Baldwin's Reduced Contact with the Store and Tone Of Voice.**

Plaintiff conclusorily argues that Baldwin's failure to visit her store, reduced phone calls to the store, and her tone of voice in the ten days following the disclosure of her pregnancy show that Baldwin viewed Plaintiff's pregnancy adversely. The uncontested summary judgment record evidence reflects that Baldwin had spent a greater than normal amount of time in Plaintiff's store during March 2005 in preparation for the Divisional Meeting that would be held in Plaintiff's store. Those visits decreased thereafter when Plaintiff received her Performance Appraisal because Baldwin had to travel to the other 10-15 stores in her region to administer the performance reviews to the other store managers she supervised. (Clerk's Dkt No. 29-4, p. 19 (App. 94 ¶ 3)). Plaintiff's does not dispute, with any evidence, that Baldwin's visits and calls decreased because she was visiting her other stores and administering performance reviews to those managers.

Plaintiff also complains, in a conclusory manner, that Baldwin's tone of voice changed and she was not as "cherry" [sic] as she had been.[3] (Clerk's Dkt No. 44-2 at 12). The Magistrate Judge properly discounted the evidence as being too conclusory and nonspecific to be probative. Plaintiff has offered no objective evidence of how these mannerisms or tone of voice allegedly changed or any witness testimony from any witness that had observed this alleged change in demeanor. Contrast this lack of objective, nonconclusory statements with Plaintiff's own admissions that no Pier 1 employee ever made any negative or derogatory remarks about Plaintiff's pregnancy; the possibility she might need to take a future leave of absence for her pregnancy; or that she might eventually have work restrictions resulting from her pregnancy. Plaintiff's argument fails to undermine the Magistrate Judge's Report.

**D. Temporal Connection**

Plaintiff argues that the fact that fourteen (14) days passed between the time she volunteered her pregnancy and her discharge tends to show that Pier 1's stated reasons for terminating her are pretextual. (Clerk's Dkt No. 44-2 at 8-9). As a preliminary matter, it is well-settled that while a temporal connection may be useful in establishing a *prima facie case*, it is of little value in assessing pretext. *See e.g., Groves v. Cost Planning and Management Intern, Inc.*, (8th Cir. 2004) (timing alone is insufficient to undermine to undermine the employer's legitimate reasons or establish pretext). The minimal probative value of a temporal connection is even further diminished when there are intervening acts that explain the timing of the decision. *See e.g., Freadman v. Metropolitan Prop. & Casualty Ins. Co.*, 484 F.3d 91, 101 (1st Cir. 2007) (rejecting the importance of a twenty-four day temporal connection between events where

[3] It is puzzling how Plaintiff can argue that Baldwin's mannerisms, tone of voice and treatment of Plaintiff changed after disclosure of her pregnancy when Plaintiff also contends that Baldwin never visited her store between April 19 and 29 and only called on 1 or 2 occasions. *Cf.* Clerk's Dkt No. 44-1 at 13 ("Ms. Baldwin did not once visit the store . . .") and Clerk's Dkt. No. 44-2 at 6 ("Her mannerisms changed, she was not as cherry [sic] and the tone of her voice changed.").

Plaintiff's intervening conduct explained the timing of the employer's decision); *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (intervening unprotected conduct eroded any causal connection suggested by the temporal proximity between plaintiff's protected conduct and the adverse employment action.); *Powers v. Tweco Products, Inc.*, 206 F.Supp.2d 1097, 1118 (D. Kan. 2002). Given the intervening misconduct of Plaintiff (i.e., her dishonesty); the prompt and thorough investigation; the timing of her separation of her employment is not probative on the issue of whether Pier 1's stated reason are false or pretextual. Consequently, the Magistrate Judge's Report and Recommendation should be adopted and Pier 1's Motion for Summary Judgment granted.

**E. Severity of the Discipline.**

Plaintiff also contends that her termination for one instance of dishonesty demonstrates that the decision was false or pretextual because she had never been previously warned about not being dishonest and the discipline was too severe. (Clerk's Dkt No. 44-1 at 16). Plaintiff was the highest ranking Pier 1 employee at the Newport store. She was ultimately responsible for overseeing and protecting Pier 1's assets, property, employees and customers. (Clerk's Dkt No. 47 at 27). That Plaintiff was never given previous disciplinary warnings for dishonesty is irrelevant. Where the summary judgment evidence reflects that some level of discipline was appropriate, the question of discipline issued is a business decision that is properly left to the discretion of the employer unless Plaintiff can show that the employer has treated other employees engaging in the same misconduct dissimilarly. *See Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991) ("Courts may not sit as super personnel departments, assessing the merits-or even rationality-of employers' nondiscriminatory business decisions."); *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 8 (1st Cir. 2000) (even if jury could conclude that decision to terminate plaintiff was unfair, that proof is insufficient to state a Title

VII claim). Plaintiff concedes that she can identify no non-pregnant employee that engaged in similar misconduct like she did who was not similarly disciplined. (Clerk's Dkt No. 29-1 ¶ 78-79; Clerk's Dkt No. 47 at 21: 22-25; 22: 1). Consequently, the level of discipline she received for her dishonesty is not probative evidence that Pier 1's decision was pretextual.

## CONCLUSION

For all of the above reasons, Pier 1 requests the Court deny Plaintiff's Motion for Reconsideration of Magistrate Almond's Recommendation to Grant Defendants' Motion for Summary Judgment; Adopt the Magistrate Judge Almond's Report and Recommendation; and grant Pier 1 such additional and further relief to which it may be justly entitled.

Respectfully submitted,

/s/ Robert P. Brooks
ROBERT P. BROOKS (#3721)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903-1345
Tel: (401) 274-7200
Fax: (401) 751-0604
May 28, 2008
rbrooks@apslaw.com

-And-

Russell D. Cawyer *(Admitted Pro Hac Vice)*
State Bar No. 00793482
Kelly Hart & Hallman LLP
2500 Texas Commerce Tower
201 Main Street
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Telefax: (817) 878-9280
russell.cawyer@khh.com

**ATTORNEYS FOR DEFENDANT
PIER 1 IMPORTS (U.S.), INC.**

**CERTIFICATE OF SERVICE**

To: Bruce P. Gladstein, Esq.
750 East Ave.
Pawtucket, RI 02860

I hereby certify that I filed Pier 1 Imports (U.S.), Inc.'s Brief in Support of its Motion for Summary Judgment through the ECF system on the 28th day of May, 2008, and that notice will be sent electronically to the above-named counsel who is a registered participant identified on the Mailing Information for Case No. 07-484T-LDA.

/s/ Robert P. Brooks